IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DERONNIUS R. YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:23-CV-1423-D |
| VS. | § | |
| | § | |
| CITY OF IRVING, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

*Pro se* plaintiff Deronnius R. Young ("Young") brings this action against the City of Irving ("City"), former Chief of Police Jeff Spivey ("Chief Spivey"), and three individual Irving Police Department ("IPD") officers alleging claims under 42 U.S.C. § 1983 based on the officers' alleged deprivation of Young's constitutional rights. The City, Chief Spivey, and the individual officers each move to dismiss under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the court grants the motions, but also grants Young leave to replead.

I

On June 25, 2021 IPD Officer Adam Landry ("Officer Landry") engaged his patrol vehicle lights as Young drove past him while exiting the parking garage at a concert venue in the City.[1]  Young pulled over, parked his vehicle, and approached Officer Landry to learn

---

[1]In deciding defendants' Rule 12(b)(6) motions, the court construes the complaint in the light most favorable to Young, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Young's favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004); *see also infra* § II.

why he had been pulled over. Officer Landry informed Young that he had heard Young sounding his car horn at the vehicle in front of him as he exited the parking garage and that it was "against the law to sound a car horn when there was not an emergency." Compl. ¶ 19. Young informed Officer Landry that the law he recited was "false" and "intentionally misrepresented," *id.* ¶ 20, but Officer Landry ignored Young and requested his license and insurance documents. Young started to get the requested information, but asked Officer Landry once more to clarify why he was being detained. Officer Landry maintained that it was illegal to sound a car horn at a vehicle when there was not an emergency.

Young informed Officer Landry that he would happily comply with his requests *after* Officer Landry communicated a valid and actual violation of the law. Young asked Officer Landry which section of the Texas Transportation Code he was referencing, but Officer Landry insisted that he did not need to explain anything further to Young. Young, who was a JD/MBA student at Southern Methodist University in Dallas at the time, was certain that Officer Landry's interpretation of the Texas Transportation Code was incorrect because he had recently conducted research on the Transportation Code.

Allegedly afraid for his safety "because he was unlawfully detained under false impressions of the law," *id.* ¶ 23, Young dialed 9-1-1 and asked for a "supervisor" to come to the scene and help. Officer Landry then informed Young that he was in fact the supervisor, implying that he was the supreme authority.

Young alleges that a "mob" of officers soon arrived the scene and immediately attacked Young, shooting him repeatedly with stun guns and beating him to the ground.

Officer Landry then arrested Young without following proper *Miranda* protocol.  Young alleges that Officer Landry's "impenetrable mafia" made statements to Young such as "you'll find out why you're going to jail when we want you to know," *id.* ¶ 26, and "[i]t's gonna get real bad for ya," *id.* ¶ 27.

After placing Young in a squad car, Officer Landry told the other officers on the scene his version of what had transpired.  He stated that Young had repeatedly sounded his horn while he was driving in the garage, that he drove on the wrong side of the road, that he drove into oncoming traffic, that he cut other drivers off, that he was "drivin' crazy," and that it seemed to him that Young "has had a little bit to drink," *id.* ¶ 28.

Young alleges that Officer Landry and "the gang of officers" on the scene conspired to falsify a story that Young was under the influence and refused to take a field sobriety test ("FST").  *Id.* ¶ 29.  He contends that a female officer stated, "there is a way you can make him take an HGN,"[2] and immediately after this statement, Officer Landry muted his microphone so that he could "conjure up a false narrative to charge Young with a DUI."  *Id.* After six minutes of muted discussion with the other officers on the scene, Officer Landry transported Young to a local hospital where he was forced to give a blood sample.  Young was then transported to the Irving Jail, where he was forced to wait 36 hours before being allowed to make a phone call.  He was detained for two days and then transported to Dallas, where he was detained for another two days.

---

[2]"HGN" may refer to horizontal gaze nystagmus, a standard field sobriety test.

On April 30, 2023 all charges against Young were dismissed for "Failure to establish Prima Facie." *Id.* ¶ 32. This lawsuit followed. Young brings claims under 42 U.S.C. §§ 1983, 1985, and 1986 against Officer Landry, IPD Officer Andrew Hammett ("Officer Hammett"), IPD Officer John Phillips ("Officer Phillips"), and "John and Jane Does" and brings claims under 42 U.S.C. § 1983 and 1988/*Monell*[3] against the City. Officers Landry, Hammett, Phillips (collectively, the "Individual Officers"), Chief Spivey, and the City move in three separate motions to dismiss Young's claims under Rule 12(b)(6). Young has not responded to any of the motions, and they are now ripe for decision. The court is deciding the motions based on defendants' briefs and Young's complaint, without oral argument.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

---

[3]*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court considers together the motions to dismiss filed by Chief Spivey and the Individual Officers (sometimes referred to collectively as "Defendants"). Defendants first move to dismiss, as duplicative, Young's official-capacity claims asserted against them. Claims against government agents in their official capacities are duplicative when claims are made against the government entity. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity."). It is therefore appropriate in such circumstances for the court to dismiss the official-capacity claims. *See, e.g.*, *Palo ex rel. Estate of Palo v. Dallas Cnty.*, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) (dismissing § 1983 claims against sheriff sued in his official capacity as duplicative of claims against county). Accordingly, Defendants' motions to dismiss are granted as to the official-capacity claims alleged against Chief Spivey and the Individual

Officers.

IV

The court next considers Chief Spivey's and the Individual Officers' motions to dismiss Young's individual-capacity § 1983 claims asserted against them, contending they are entitled to qualified immunity.

A

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity likewise applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required

- 6 -

to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.")).[4]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201.  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id*.  "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."  *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken."  *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right."  *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

---

[4]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation.  *Id*. The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases."  *Id*. at 242.

B

Defendants contend that Officer Phillips and Chief Spivey are entitled to qualified immunity because Young has not alleged that they were personally involved in any alleged constitutional violation.

1

"For there to be liability under section 1983, a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights, or there must be a causal connection between the actions of that person and the constitutional right sought to be redressed."  *King v. Louisiana*, 294 Fed. Appx. 77, 83 (5th Cir. 2008) (per curiam) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)) (affirming dismissal of claims against individual defendants, based on qualified immunity, where the allegations against these defendants failed to set forth any constitutional violation); *see also Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) ("In order to state a cause of action under § 1983, [plaintiff] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.").

2

The only allegation in the complaint regarding Officer Phillips is in the context of Young's § 1983 claim against the City, in which Young alleges:

- 8 -

> IPD's departmental policy permits/ratifies the manipulation of
> police video footage.  Sgt. Jo Phillips of IPD internal Affairs
> informed Young that there are many reasons an officer may not
> provide accurate/timely video footage.  This formal policy,
> ratified by IPD and Internal Affairs, permits disintegrations
> officers, like the Defendants to falsify and destroy exculpatory
> evidence and deprive citizens of Constitutional Rights.

Compl. ¶ 46(c).  This assertion does not plausibly allege that Officer Phillips was in any way

involved in the deprivation of Young's constitutional rights.  Accordingly, the court grants

the Individual Officers' motion to dismiss Young's individual-capacity § 1983 claim against

Officer Phillips.

                                        3

      Young alleges that Chief Spivey was the final policymaker for the IPD "with the

authority for setting policies, including training of the Irving Police Officers," and "had a

duty, but failed to implement and enforce such policies, practices, and procedures for the IPD

that respected Young's constitutional rights," Compl. ¶ 2; that "Chief Spivey's and his

respective department's failure to implement the necessary policies and the (de facto)

implementation of unconstitutional policies, caused Young to experience unwarranted and

chronic physical, mental, professional, and reputational demise," *id.* ¶ 3; that the Chief of

Police, along with others, is "responsible for the implementation of their department's

budgets, policies, procedures, practices, and customs, as well as the acts and omissions,

challenged by this suit," *id.* ¶ 10; that "[t]he actions of Defendants, which lead to the

deprivation of Young's rights, privileges, and liberties causing injury to his person, health,

and reputation, were done pursuant to one or more interrelated *de facto* as well as explicit

policies, practices, and customs of the Defendant, City and Chief policymaker acting as agents/officials," *id.* ¶ 45; and that "[a]t all times material to this Complaint, the City of Irving, IPD, and its chief policymaker ratified interrelated formal policies and *de facto* customs, practices, and policies," *id.* ¶ 46.  These conclusory allegations, which primarily recite the elements of Young's § 1983 claim *against the City*, are insufficient to plausibly allege that Chief Spivey was personally involved in the deprivation of Young's constitutional rights.

Nor has Young plausibly alleged that Chief Spivey violated his constitutional rights by failing to train or supervise IPD Officers.  To succeed on a claim for supervisory liability, a plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986)); *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 n.8 (5th Cir. 1994) (en banc) (stating that deliberate indifference standard applies to all cases alleging a constitutional violation).  A plaintiff must identify a deficiency in a training program closely related to the injury complained of and must further show that the injury would have been avoided "under a program that was not deficient in the identified respect."  *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).  The identified inadequacy "must be obvious and obviously likely to result in a constitutional violation."  *Cozzo*, 279 F.3d at 287 (citing *Thompson*, 245 F.3d at 459).  Normally, proof of a single instance—rather than

a pattern of similar violations—will not sustain a plaintiff's claim that such a lack of training or supervision caused a violation of his constitutional rights. *Id.* at 286-87 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)).

In support of his § 1983 claim against the City, Young alleges that

> Chief policymaker's failure to train/supervise - As mentioned above, Sgt. Land[r]y blatantly misrepresented the transportation code. This failure to train/supervise was ratified by the Chief of police. Sgt. Landry was promoted to sergeant in March 2021, only three months before engaging in the aforementioned unconstitutional acts. The Chief policymaker is responsible for hiring competent, ethical staff who engage directly with the citizenry.

Compl. ¶ 46(b) (footnote omitted). Assuming *arguendo* that Young intended to bring a claim for failure to train/supervise against Chief Spivey in his individual capacity, the conclusory allegations in the complaint are insufficient to plausibly allege that Chief Spivey failed to train or supervise his subordinates, that any lack of training or supervision caused a violation of Young's constitutional rights, or that Chief Spivey acted with deliberate indifference.

Accordingly, because Young has failed to plausibly allege that Chief Spivey violated his constitutional rights, the court grants Chief Spivey's motion to dismiss Young's individual-capacity § 1983 claim asserted against him.[5]

---

[5]Chief Spivey also moves to dismiss Young's conspiracy claims. It is not clear from the complaint that Young intends to assert his claim for "Conspiracy to deprive constitutional rights" against Chief Spivey. To the extent that he does, the court dismisses this claim for the reasons explained below. *See infra* § IV(F).

C

The Individual Officers next contend that Young has failed to plausibly allege that they violated his Fourth Amendment rights by arresting him without probable cause.[6]

1

The Fourth Amendment protects individuals "against unreasonable searches and seizures."  U.S. Const. Amend. IV.  Generally, warrantless searches and seizures are considered unreasonable, "subject only to a few specifically established and well-delineated exceptions."  *Katz v. United States*, 389 U.S. 347, 357 (1967).

> The Fifth Circuit recognizes three different tiers of constitutionally permissible citizen-police contact: (1) that which has no coercion or detention and does not implicate the Fourth Amendment, (2) an investigatory stop, which is a brief seizure that must be supported by reasonable suspicion, and (3) a full-scale arrest, which must be supported by probable cause.

*United States v. $67,000 in U.S. Currency*, 2023 WL 2530860, at *2 (N.D. Tex. Mar. 15, 2023) (Starr, J.) (internal quotation marks and brackets omitted) (quoting *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014)).

2

The court begins with Young's allegation that Officer Landry violated his Fourth Amendment rights during the initial traffic stop, *see* Compl. ¶ 40 (alleging that "[a]t various

---

[6]As explained below, to the extent that Young's § 1983 claim is based on Officer Landry's initial stop of his vehicle, the Fourth Amendment only requires that Officer Landry have had reasonable suspicion—not probable cause—to justify the traffic stop.  *See infra* § IV(C)(2).

times, Sgt. Landry misrepresented the transportation code during an unlawful traffic stop.");

*id.* ¶ 23 (alleging that Young was "unlawfully detained under false impressions of the law),

which falls under the second tier of citizen-police contact.   To determine whether an

investigatory stop is reasonable, the court analyzes, *inter alia*, "whether the officer's action

was justified at its inception." *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).  "For a traffic stop

to be justified at its inception, an officer must have an objectively reasonable suspicion that

some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before

stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).

Although "'reasonable suspicion' is a less demanding standard than probable cause and

requires a showing considerably less than preponderance of the evidence, the Fourth

Amendment requires at least a minimal level of objective justification for making the stop."

*Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *United States v. Sokolow*, 490 U.S. 1,

7 (1989)).  As previously stated, witnessing a traffic violation is an objectively reasonable

basis on which to conduct a traffic stop.  *Lopez-Moreno*, 420 F.3d at 430.

     Young alleges that Officer Landry stopped Young's vehicle because he believed that

Young had violated Tex. Transp. Code Ann. § 547.501(c) (West 2022), which provides that

"[a] motor vehicle operator shall use a horn to provide audible warning only when necessary

to insure safe operation."  Young does not dispute that he honked his horn, does not allege

that he did so "to insure safe operation" of his vehicle, and does not allege that Officer Landry

did not reasonably believe that Young had violated § 547.501(c).  He instead contends that

Officer Landry misrepresented the Transportation Code and falsely interpreted § 547.501(c)

by "conflat[ing] . . . 'emergency situations' with 'warning devices.'"  Compl. ¶ 22.  But even

if Officer Landry's understanding of § 547.501(c) was incorrect—a question the court need

not decide—he was entitled to make a "reasonable but mistaken judgment" so long as his

determination that Young had violated § 547.501(c) was not "plainly incompetent."

*Weisshaus v. Teichelman*, 637 F.Supp.3d 434, 440 (N.D. Tex. 2022) (Kacsmaryk, J.), *aff'd*,

2024 WL 620372 (5th Cir. Feb. 14, 2024); *see also Hein v. North Carolina*, 574 U.S. 54, 57

(2014) (holding that "a mistake of law can nonetheless give rise to the reasonable suspicion

necessary to uphold the seizure under the Fourth Amendment" if the mistake is reasonable).

Young has not plausibly alleged that Officer Landry's interpretation of § 547.501(c) was

*unreasonable* or that Officer Landry initiated the traffic stop without reasonable suspicion that

a traffic violation, i.e., a violation of § 547.501(c), had occurred.  Accordingly, Officer Landry

is entitled to qualified immunity to the extent that Young bases his § 1983 claim on an alleged

"unlawful traffic stop."  Compl. ¶ 40.

3

The court next turns to Young's allegation that he was "unlawfully . . . arrested"

Compl. ¶ 40, which the court assumes is an allegation that Young was arrested without

probable cause, in violation of the Fourth Amendment.

"The right to be free from arrest without probable cause is a clearly established

constitutional right."  *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).  To overcome

the Individual Officers' qualified immunity defense, Young must allege that the Individual

Officers did not have probable cause to arrest him.  "Probable cause exists when facts and

circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." *United States v. Carrillo-Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994) (citing *United States v. De Los Santos*, 810 F.2d 1326, 1336 (5th Cir. 1987)).  To determine whether probable cause existed, "courts examine the totality of the circumstances," *United States v. Powell*, 732 F.3d 361, 372 (5th Cir. 2013) (citing *Illinois v. Gates*, 462 U.S. 213, 234 (1983)), "including the officers' training and experience as well as their knowledge of the situation at hand," *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1995).  "Probable cause exists if, under the totality of circumstances, there is a fair probability that . . . an illegal act is taking place." *United States v. Thompson*, 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (Fitzwater, C.J.) (citing *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006)).

Setting aside Officer Landry's reasonable belief that Young violated Tex. Transp. Code Ann. § 547.501(c), Officer Landry's dash-cam video, which the court is permitted to consider in deciding the motion to dismiss,[7] shows that Young committed at least two additional

---

[7]As noted above, review under Rule 12(b)(6) "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.)*, 594 F.3d at 387.  Because Young repeatedly refers to "[t]he police video" in his complaint, *see, e.g.*, Compl. ¶ 19, and purportedly attaches it as Exhibit A, the court in deciding Young's motion to dismiss can consider this video evidence that the Individual Officers have provided and to which Young does not object.  *See, e.g.*, *Terrell v. Town of Woodworth*, 2024 WL 667690, at *5 (5th Cir. Feb. 19, 2024) (per curiam) ("[T]he district court properly considered the video evidence from the officers' two body cams and Gonzales's dash cam that Defendants attached to their motion to dismiss because Terrell consistently referenced the video evidence in his complaint . . . and the video evidence is clearly central to his claims against Defendants in this suit.").

offenses in the presence of Officers Landry and Hammett, both of which would provide probable cause to support Young's arrest. Under Tex. Penal Code Ann. § 38.02(b) (West 2016), "[a] person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has . . . lawfully detained the person." In the video referenced in Young's complaint, Young clearly misidentified himself to Officer Landry, in violation of § 38.02(b), when, in response to Officer Landry's request that Young provide his name and date of birth, Young identified himself as John Doe and told Officer Landry that he has no date of birth. In addition, the video shows that after Officers Hammett and Landry informed Young that he was under arrest for failure to identify himself after a lawful traffic stop, Young refused to cooperate, resisted their attempts to handcuff him, and pulled away from the officers. Under Tex. Penal Code Ann. § 38.03(a),

> [a] person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

"'[T]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest,' and 'the act of resisting [arrest] can supply probable cause for the arrest itself.'" *Carroll v. Ellington*, 800 F.3d 154, 172 (5th Cir. 2015) (second alteration in original) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013)).

Because the video evidence clearly shows that Young committed at least two offenses while in the presence of Officers Landry and Hammett, the court cannot draw the reasonable inference from the complaint that defendants "unlawfully detained . . . and arrested [him]."

Compl. ¶ 40; *see Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) ("[A] plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." (quoting *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015))).

Young has not plausibly alleged that Officers Landry and Hammett arrested him without probable cause, in violation of the Fourth Amendment. Accordingly, Officers Landry and Hammett are entitled to qualified immunity to the extent that Young bases his § 1983 claim on an alleged unlawful arrest.

D

The court next turns to Young's excessive force claim.

1

The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (citation omitted). "To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Id.* (internal quotation marks omitted) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

In assessing the reasonableness of the use of force, the court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Graham*, 490 U.S. at 396). This is an objective standard: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

2

In his complaint, Young alleges that a "mob of officers arrived at the scene" and "immediately attacked" him, "shooting him repeatedly with stun guns and beating him to the ground in a routine fashion." Compl. ¶ 24. He also asserts that the officers "brutally shot and beat Young who was non-violent, showed no signs of fleeing the scene while he sat on the ground and even called 9-11 for help," *id.*; that Officer Landry's "police buddies willfully and routinely beat Young in agreement with Landry, and refused to employ any reasonable judgment, discernment, or common sense," *id.* ¶ 25; and that, "[d]ue to the shock and the excessive force of the officers' shooting and beating him relentlessly, Young entered a subconscious state of mind triggered by the trauma of the beating [and] was rendered

incoherent after suffering from the unexpected brutalities brought on by Landry and his gang," *id.* ¶ 27. These allegations, however, are contradicted by the police video, which depicts Young refusing to comply with the  commands of Officers Landry and Hammet and actively resisting arrest.

The police video shows Young attempting to walk away from Officer Landry at least twice, even though he has clearly been stopped; refusing to provide a copy of his driver license and insurance; providing a false name; refusing to obey instructions to put his hands behind his back; telling Officers Landry and Hammet that he is not under arrest and that they "cannot arrest [him]"; pulling away from the officers as they try to handcuff him; breaking free from the officers after Officer Hammett employs the taser to drive-stun Young; refusing to comply with commands to "put your hands behind your back!"; and refusing to put his hands behind his back even after Officer Hammett deploys the taser prongs the first time.  The video clearly shows that, during the arrest, Young was repeatedly advised that he was under arrest and instructed to place his hands behind his back, but repeatedly disregarded the officers' instructions and actively resisted arrest. "Only when faced with Plaintiff's continued disregard of their directives and active resistance did the officers decide to utilize the taser on Plaintiff," and "[e]ven then, Defendants warned Plaintiff that they were going to tase him before they did so; moreover, they only tased him while he was actively resisting."  Individual Officers' Br. (ECF No. 21) at 17.

"[A] plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings."

*Hanks*, 853 F.3d at 744 (quoting *Curran*, 800 F.3d at 664).  The police video does not permit the reasonable inference that the use of force in this case was unreasonable when Young was actively resisting arrest and repeatedly refusing to comply with officer commands. Accordingly, the court grants the Individual Officers' motion to dismiss Young's excessive force claim based on qualified immunity.

3

Alternatively, the court holds that Young's excessive force claim should be dismissed under the second prong of the qualified immunity analysis. *Saucier*, 533 U.S. at 201. In addition to pleading a constitutional violation, Young must also plead facts that plausibly show that the actions of Officers Landry and Hammett were objectively unreasonable in light of clearly established law at the time of the incident. *See id.*

To determine whether a right is clearly established, the court inquires "whether a reasonable officer could have believed [his conduct] to be lawful, in light of clearly established law and the information the . . . officers possessed." *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  While Young need not identify a case directly on point, "existing precedent" must "place[] the statutory or constitutional question *beyond debate*." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  The existing precedent must also "define[] the contours of the right in question with a high degree of particularity." *Id*. at 371-72.

Young's complaint does not cite any specific case law that would have put Officer

Landry or Officer Hammett on notice that his conduct was unconstitutional.  Nor does he even *allege* that the right at issue was clearly established.  Accordingly, the court in the alternative grants the Individual Officers' motion to dismiss Young's excessive force claim under the second prong of the qualified immunity analysis.

E

The Individual Officers also move to dismiss Young's § 1983 malicious prosecution claim.  The court grants the Individual Officers' motion to dismiss this claim on the ground that Young has not plausibly alleged all of the required elements.

In the Fifth Circuit, the elements of a Fourth Amendment malicious prosecution claim are

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002).  "In a malicious prosecution action, malice exists when a charge is made with knowledge that it is false or with reckless disregard for the truth."  *Phillips v. L. Brands Serv. Co., L.L.C.*, 82 F.4th 291, 302 (5th Cir. 2023) (internal quotation marks omitted).

With respect to the charges filed against him, Young alleges that

> [o]n April 30th, 2023, Young's attorney informed him that all charges documented on the June 25th, 2021 date had been dismissed by the Dallas County District Attorney for "Failure to establish Prima Facie."  Sgt. Landry and his gang of officers, in

- 21 -

> connection with Dallas county officials, (1) falsified information
> and statements in the arrest affidavit; (2) purposely destroyed and
> intentionally omitted exculpatory video evidence; (3) unlawfully
> beat and shot Young repeatedly with stun guns; (4) illegally
> obtained blood samples and (5) unlawfully detained Young in jail
> for 4 days.

Compl. ¶ 32.  These allegations are alone insufficient to establish that Officer Landry or

Officer Hammet acted with malice in connection with the charges filed against Young.

Young has not pleaded any facts regarding the charge itself.[8]  Nor has he plausibly alleged

that Officer Landry or Officer Hammet filed the charge with knowledge that it was false or

with reckless disregard for the truth—he pleads only that the charge was dismissed for

"Failure to establish Prima Facie." *Id.*  Additionally, "if the prosecution is supported by

probable cause on at least one charge, then a malicious prosecution claim cannot move

forward." *Armstrong v. Ashley*, 60 F.4th 262, 279 n.15 (5th Cir. 2023).  The court concludes

above that the video evidence conclusively establishes probable cause with respect to Young's

violations of Tex. Penal Code Ann. §§ 38.02(b) and 38.03(a).  If Young was charged with

violating either of these statutes, he cannot proceed on a malicious prosecution claim based

on the clear (and undisputed) evidence of probable cause.

Accordingly, because Young has not plausibly alleged that Officer Landry or Officer

---

[8]For example, the complaint fails to even plead the crime that Young was charged
with committing.  He alleges only that Officer Landry and his collaborators "conjur[ed] up
a false narrative to charge Young with a DUI," Compl. ¶ 29, and that after his blood was
illegally obtained, he "was transported to Irving jail where he waited 36hrs before being
allowed to make a phone call.  Young was illegally detained in Irving jail for two days then
chained and hauled to Dallas jail for two more additional days," *id.* ¶ 31.

Hammet acted with malice, the court grants the Individual Officers' motion to dismiss

Young's § 1983 malicious prosecution claim on qualified immunity grounds.[9]

F

The Individual Officers also move to dismiss Young's constitutional conspiracy

claims, which he appears to allege under 42 U.S.C. §§ 1983, 1985, and 1986.  To state a civil

conspiracy claim under § 1983, Young must allege both an agreement between the defendants

to commit an illegal act and an actual deprivation of constitutional rights.  *Cinel v. Connick*,

15 F.3d 1338, 1343 (5th Cir. 1994); *see also Pfannstiel v. City of Marion*, 918 F.2d 1178,

1187 (5th Cir. 1990) ("[A] conspiracy claim is not actionable without an actual violation of

section 1983.").  This second element requires proof of an independent constitutional violation

for which the defendants are not entitled to qualified immunity.  *Bevill v. Fletcher*, 26 F.4th

270, 275 (5th Cir. 2022).  The court has concluded, above, that the Individual Officers are

---

[9]Because the court concludes that Young has not plausibly alleged that Officer Landry or Officer Hammet violated his constitutional rights with respect to his § 1983 malicious prosecution claim, it need not address the Individual Officers' contention that this claim is subject to dismissal.  This is so because the Fifth Circuit had not yet recognized malicious prosecution claims at the time that Young was arrested and charged.  *Compare Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020) ("In *Castellano v. Fragozo*, an *en banc* majority of this court extinguished the constitutional malicious-prosecution theory." (citation omitted)), *with Armstrong*, 60 F.4th at 278 ("The Supreme Court *recently* held that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983." (emphasis added) (citing *Thompson v. Clark*, 596 U.S.36, 42 (2022))); *see also Wallace v. Taylor*, 2023 WL 2964418, at *6 (5th Cir. Apr. 14, 2023) (unpublished) ("While the Fourth Amendment right to be free from arrest absent probable cause has been clearly established for some time, there was no clearly established Fourth Amendment right to be free from malicious prosecution at the time of Wallace's arrest [on February 21, 2021].  Therefore, [Officer] Taylor is entitled to qualified immunity from Wallace's malicious prosecution claim.").

entitled to qualified immunity with respect to each of the constitutional violations alleged against them, i.e., unlawful detention, seizure, and arrest; excessive force; and malicious prosecution. *See* Compl. 2 (Count I). Because Young's conspiracy claim appears to be based only on his malicious persecution claim, *id.* ¶ 40 ("Hammett and Does conspired to falsify sworn documents and use ratified departmental policy to deny Young rights, privileges, and liberties afforded by the constitution."), his failure to overcome the Individual Officers' qualified immunity as to the underlying claim is fatal to his constitutional claim. *See, e.g.*, *Cervantez v. Love*, 2024 WL 2967336, at *17 (N.D. Tex. June 12, 2024) (Hendrix, J.) ("[B]ecause Cervantez's conspiracy claim is based on her denial of access to courts claim, her failure to overcome the defendants' qualified immunity as to the underlying claim is fatal to her conspiracy claim. (citation omitted)).

To the extent that Young brings constitutional conspiracy claims under §§ 1985 and 1986, these claims are subject to dismissal under Rule 12(b)(6) for the same reasons as his § 1983 claim. *Calhoun v. Villa*, 2017 WL 3701971, at *4 (S.D. Tex. Aug. 7, 2017) ("Sections 1985 ('Conspiracy to interfere with civil rights') and 1986 ('Action for neglect to prevent'), each requires, as a predicate, a violation of a federal Constitutional right and a conspiracy to do so."), *rec. adopted*, 2017 WL 3670028 (S.D. Tex. Aug. 24, 2017), *aff'd*, 761 Fed. Appx. 297 (5th Cir. 2019). In addition, courts have held that city employees, such as those in this case, cannot conspire among themselves for purposes of liability under §§ 1985 and 1986. *See Swilley v. City of Houston*, 457 Fed. Appx. 400, 404 (5th Cir. Jan. 6, 2012) (per curiam) ("The City of Houston is a single legal entity and, as a matter of law, its employees cannot

conspire among themselves." (citation omitted)).

Accordingly, the court grants the Individual Officers' motion to dismiss Young's claim for conspiracy to deprive constitutional rights.

V

The court now turns to Young's claims against the City under 42 U.S.C. §§ 1983 and 1988/*Monell*.

A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Although a municipality cannot be held liable simply on a theory of respondeat superior, *id*. at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

The first element requires that Young adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir.

2003)).  Although a "single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a [municipality] may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations omitted) (second alteration in original).  A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."  *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Young must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of a governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)).  "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance."  *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental. . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall.*

- 26 -

*Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Young adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Young must therefore plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

Alternatively, a plaintiff may assert a failure-to-train theory of municipal liability. "Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.) (citations omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "The failure to provide

- 27 -

proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (brackets omitted) (quoting *City of Canton*, 489 U.S. at 390). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. "[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *City of Canton*, 489 U.S. at 388).

B

Young bases his § 1983 claim against the City on the following "interrelated formal policies and *de facto* customs, practices, and policies":  (1) IPD's "statutory warning policy," which Young alleges defendants used "to unlawfully transport [him] to a hospital to obtain blood samples," Compl. ¶ 46(a); (2) failure to train/supervise; (3) IPD's departmental policy that permits/ratifies the manipulation of police video footage; and (4) the "customary practices of low-level officers who assault, wrongfully arrest, and beat free citizens," *id.* ¶ 46(e).[10]

---

[10]In support of his § 1983 claim against the City, Young also alleges that "[t]he Magistrate Judge ratified the Defendants' fabrications by approving an arrest warrant for probable cause of DWI suspicion, even though Defendants failed to provide evidence of such violations." Compl. ¶ 46(d).  This allegation does not plausibly allege any official policy or custom of the City.

1

The court begins with Young's allegations related to the "statutory warning policy." *Id.* ¶ 46(a). "If an official policy itself violates federal law, or directs an employee to do so, then the policy is facially unconstitutional, and it necessarily follows . . . that a constitutional violation will most likely occur." *Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 308 (5th Cir. 2023) (ellipsis in original) (internal quotation marks and footnotes omitted). "When that happens, the facially unconstitutional policy's mere existence satisfies the moving-force requirement that is *Monell*'s third element." *Id.* (citing *Burge*, 336 F.3d at 370). "On the other hand, a 'facially innocuous policy will support liability' only if 'it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result.'" *Id.* (quoting *Balle v. Nueces Cnty.*, 952 F.3d 552, 558 (5th Cir. 2017)).

 "An official, written policy is 'itself' unconstitutional only if it affirmatively allows or compels unconstitutional conduct." *Id.* at 309 (citing *Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016)). Young has not plausibly pleaded that the "statutory warning policy" affirmatively allows or compels unconstitutional conduct. He instead alleges that the Individual Officers "exploit[ed]" the "statutory warning policy" when they used it "to unlawfully transport Young to a hospital to obtain blood samples." Compl. ¶ 46(a). But as stated above, "a 'facially innocuous policy will support liability' only if 'it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result.'" *Edwards*, 70 F.4th at 308 (quoting *Balle*, 952 F.3d at 558). Young has failed to plausibly allege that, in adopting or maintaining the "statutory warning policy,"

the City Council—the City's final policymaker, *see Pinedo v. City of Dallas, Tex*as, 2015 WL
221085, at *5 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.)—acted with deliberate indifference
to the known or obvious consequences that constitutional violations would result.  *See*
*Edwards*, 70 F.4th at 308.  His conclusory allegation that "[t]he City, acting at the level of
official policy, practice, and custom, with callous, conscious, unreasonable, and deliberate
indifference to Young's constitutional rights, authorized, tolerated, and institutionalized the
practices and ratified the illegal conduct described," Compl. ¶ 46, is insufficient.
Accordingly, the court grants the City's motion to dismiss Young's § 1983 claim to the extent
that it is based on the "statutory warning policy."

2

To the extent that Young bases his § 1983 claim on the alleged "departmental policy
[that] permits/ratifies the manipulation of police video footage," Young has not plausibly
pleaded a § 1983 claim against the City.  He alleges that

> IPD's departmental policy permits/ratifies the manipulation of
> police video footage.  Sgt. Jo Phillips of IPD internal Affairs
> informed Young that there are many reasons an officer may not
> provide accurate/timely video footage.  This formal policy,
> ratified by IPD and Internal Affairs, permits disintegrations
> officers, like the Defendants to falsify and destroy exculpatory
> evidence and deprive citizens of Constitutional Rights.

Compl. ¶ 46(c).  These allegations are insufficient to plausibly plead the existence of any
official policy or widespread custom regarding the manipulation of police video footage or
that any such policy was the "moving force" behind Young's constitutional deprivation.
Accordingly, the court grants the City's motion to dismiss Young's § 1983 claim to the extent

- 30 -

it is based on an alleged policy that permits the manipulation of police video footage.

3

Young has also failed to plausibly plead a § 1983 claim based on the "customary practices of low-level officers who assault, wrongfully arrest, and beat free citizens." Compl. ¶ 46(e).

"An official policy usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Covington v. City of Madisonville*, 812 Fed. Appx. 219, 225 (5th Cir. 2020) (per curiam) (internal quotation marks omitted) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). A "pattern of conduct" is necessary when the municipal actors are not policymakers. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (citations omitted). If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id*. at 850 (citation omitted).

In support of his claim, Young alleges that

> IPD permits customary practices of low-level officers who assault, wrongfully arrest, and beat free citizens. This wonton disregard for the citizenry is so pervasive that the City and its Chief policymakers recklessly disregard the disenfranchisement of the citizenry without question. Police video shows the mob of officers sneaking up being Young to attack him without notice, cause, or warning. Officers immediately assaulted Young without employing any sensible training/communication with Young. Not one officer on the scene thought the customary practice was unacceptable, even though it was unconstitutional.

Compl. ¶ 46(e). Young's conclusory allegations are insufficient to plausibly allege a pattern of conduct because Young has failed to identify any similar incidents of alleged constitutional deprivations. *Zarnow*, 614 F.3d at 169. Accordingly, the court grants the City's motion to dismiss Young's § 1983 claim based on the alleged "customary practices" of City officers.

### 4

The court now turns to Young's § 1983 claim against the City for failure to train/supervise. "[T]here are limited circumstances in which an allegation of a 'failure to train' [or failure to supervise] can be the basis for liability under § 1983." *City of Canton*, 489 U.S. at 387. To succeed on a failure-to-train or failure-to-supervise claim, a plaintiff must be able to show: (1) the training procedures or supervision of employees was inadequate, (2) a causal link between such failure and the violation of plaintiff's constitutional rights, and (3) such failure amounts to deliberate indifference. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (brackets and citation omitted). Thus

- 32 -

when a municipality's policymakers are on actual or constructive notice that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipality may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*

Regarding the alleged failure to train/supervise, Young alleges:

> As mentioned above, Sgt. Land[r]y blatantly misrepresented the transportation code. This failure to train/supervise was ratified by the Chief of police. Sgt. Landry was promoted to sergeant in March 2021, only three months before engaging in the aforementioned unconstitutional acts. The Chief policymaker is responsible for hiring competent, ethical staff who engage directly with the citizenry.

Compl. ¶ 46(b) (footnote omitted). He also asserts that "Police video shows the mob of officers sneaking up being Young to attack him without notice, cause, or warning. Officers immediately assaulted Young without employing any sensible training/communication with Young." *Id.* ¶ 46(e).

These conclusory allegations are alone insufficient to plausibly allege that the City failed to train or supervise its officers. Young does not allege any specific inadequacy in the training of IPD officers; he does not plausibly plead that a failure to train or supervise the IPD Officers was the moving force in causing his constitutional injury; and he does not allege, other than in conclusory terms, that any policymaker acted with deliberate indifference to the allegedly inadequate training or supervision of IPD officers.

Accordingly, the court grants the City's motion to dismiss Young's § 1983 claim to the extent that it is based on an alleged failure to train or supervise.

- 33 -

VI

To the extent that Young intends to bring claims against any of the defendants based on alleged violations of the Texas Constitution, *see* Compl. ¶ 4 ("Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas for Causes of Action of constitutional violations and seeks recovery under applicable law."), the court grants defendants' motions to dismiss these claims.  Because § 1983 provides "a remedy for the vindication of other federal statutory or constitutional rights," *Carbonell v. Louisiana Department of Health & Human Resources*, 772 F.2d 185, 188 (5th Cir.1985), any purported claim based on the Texas Constitution is not remediable pursuant to § 1983.  And Young has not otherwise pleaded any claim under Texas law.

VII

Although the court is granting the motions to dismiss filed by Chief Spivey, the Individual Officers, and the City, it will allow Young to file an amended complaint.

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (alteration omitted) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  It is not apparent that the pleading

- 34 -

deficiencies in Young's complaint are entirely incurable, and Young has not advised the court that he is unwilling or unable to amend in a manner that will avoid dismissal.

*  *  *

Accordingly, the court grants the motions to dismiss filed by Chief Spivey, the Individual Officers, and the City and grants Young leave to file an amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

September 12, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE