**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| **DERONNIUS R. YOUNG,** | § | **CIVIL ACTION NO. 3:23-CV-01423-D** |
| **PLAINTIFF,** | § | |
| **V.** | § | |
| **ADAM LANDRY, ANDREW HAMMETT,** | § | |
| **JO PHILLIPS, JOHN/JANE** | § | |
| **DOES, & THE CITY OF IRVING,** | | |
| **DEFENDANT(S).** | § | |
| | § | **JURY DEMAND** |

### PLAINTIFF'S 1st AMENDED COMPLAINT

COMES NOW, PLAINTIFF DERONNIUS R. YOUNG, a *pro se* litigant, for his Complaint against ADAM LANDRY, ANDREW HAMMETT, JO PHILLIPS, JOHN/JANE DOES, & THE CITY OF IRVING, VIA ITS LEGISLATIVE OFFICERS, (collectively, "DEFENDANTS") alleges, on knowledge as to his own actions, and otherwise upon information and belief, as follows:

### I. NATURE OF THE CASE

1. This is a federal civil rights case about multiple Irving, TX Police Department officers who framed a college student for DWI, Resisting Arrest, and Failure to ID. Mr. Young, a *pro se* Plaintiff, respectfully submits his first amended Complaint of relief for seven Constitutional violations he suffered because of Defendants' willful misconduct and/or deliberate indifference.

2. Defendant officers Sgt. Landry and Andrew Hammet knowingly lied in sworn affidavits submitted to three courts. They also lied in police reports to corroborate the affidavits.

They even lied to the magistrate judge, Irving municipal court, and Dallas County District Attorney's Office (DCDAO) to justify the wrongful detention, arrest, jailing, and prosecution of DeRonnius Young. Based on Defendants' lies, a magistrate judge granted their request for a warrant to forcibly extract and examine Mr. Young's blood.

3. However, the District Attorney determined that there was no evidence to support the false claims made against Mr. Young. Thus, the criminal court exonerated Mr. Young from all false charges in April 2023.

4. The criminal District Attorney dismissed all three charges against Mr. Young for 'failure to establish prima facie.' The criminal court terminated all three cases after consulting the record and determining that there was no evidence to support reasonable suspicion/probable cause. After Mr. Young questioned the legitimacy of Defendant Landry's traffic stop, Defendant Landry became aggravated. He spontaneously directed Defendant Hamett, in collaboration with Does, to frame Mr. Young for DWI when he purposely lied about the reason, he initiated the traffic stop. Defendants Landry/Hammet/Does placed Mr. Young under arrest for DWI/Resist Arrest/Failure to ID.

5. If a prosecutor cannot establish a prima facie case, that almost certainly means she did not have probable cause to support the arrest of the defendant. That, in turn, means that the charges would be dismissed even before getting to the stage of the prosecution offering her prima facie case.[1]

---

[1]*https://www.criminaldefenselawyer.com/resources/criminal-defense/criminal-defense-case/what-does-a-prima-faciecasemean#:~:text=If%20a%20prosecutor%20cannot%20establish,offering%20her%20prima%20facie%20case*

6.      The Irving Police Department records were purposely omitted showing Defendant officers huddle together out of earshot from any other witnesses. Defendant officers took steps to conceal and justify Defendant Landry's unlawful detention and arrest decision, as well as retaliate against Mr. Young.[2]

7.      From June 2021 to present, Mr. Young has suffered daily from trauma and multiple deprivations of liberty inflicted by the unlawful prosecution.

8.      At the time of the unlawful stop, Mr. Young was unsure of the specific traffic code Landry purported to reference; however, because of Mr. Young's novice legal background and budding legal education, he was unwavering in asserting his right to be free from unreasonable government intrusion and refused to admit to Landry's false observations when he initiated the traffic stop.[3]

9.      Never mind the details of the traffic code disagreement, the criminal court reviewed the evidence and determined that Defendant Sgt. Landry lied about his reasons for initiating the traffic stop when he mixed material falsifications with inconsequential true statements to defraud the magistrate judge in his probable cause warrant and related DWI documentation.

10.     At the request of Defendant Landry, acting as supervisor and superior, Mr. Young was violently tazed, subjected to an unauthorized blood sample, and remained in jail for four

---

[2]Sgt. Jo Phillips 'manages' the internal investigations process for the City of Irving, and he told Mr. Young that the department's policy permits omission of video evidence.
[3]Landry retaliated against Mr. Young because he would not agree to Landry's obvious lies about his driving behavior.

days based on the lies Defendants Landry and Hammet included in their probable cause applications and related DWI documentation.

11. Additionally, the unknown officers who arrived at the scene took steps to conceal and justify Defendant Landry's erroneous decisions to detain and arrest Mr. Young. Defendants agreed to submit, through Defendant Hammet, a sworn application for a blood extraction warrant to a judge.

12. But rather than accurately recount the interaction between Mr. Young and Defendant Landry, the sworn documentation hinged on multiple false statements that were directly contradicted by the criminal District Attorney's decision to terminate all 3 cases when they reasoned that there was no evidence to support probable cause/reasonable suspicion.

13. By fabricating evidence in the form of false affidavits, reports, and other statements, and deliberately misleading a judge, district attorney, and a prosecutor, Defendants subjected Mr. Young to (1) his first and only arrest; (2) an illegal blood extraction and examination by a government agents; (3) four nights in jail instead of his own bed; lost work and income; (4) coercion by government agents to take a plea deal; (5) and a multitude of other harms inflicted by false charges still hanging over his head today.

14. Mr. Young also filed a complaint with the Irving Police Department Internal Affairs Division. However, Defendant Sgt. Jo Phillips, via IPD internal Affairs, ratified Landry/Hammet/Does misconduct based on the falsified information submitted in Defendant officers' probable cause applications.[4]

---

[4] Exhibits 1-16.

**PLAINTIFF'S 1ST AMENDED COMPLAINT** **4**

15. Specifically, Dallas County Public Defender, Curtis Hargis, reviewed omitted evidence and discovered that Defendant Sgt. Landry, along with Defendant officers, willfully falsified affidavits, probable cause applications, and police reports to frame Mr. Young for DWI.

16. Since the above-mentioned incident, witnesses have contacted Mr. Young, willing to come forward with material information related to Defendant Sgt. Landry's history of misconduct withing the Irving Police Department.[5]

17. After the criminal court exonerated Mr. Young because there was no evidence supporting the material falsifications made against him, he initiated civil proceedings desperate for help rectifying the chronic physical/mental/emotional/professional/reputational injuries he continues to suffer because the false charges persist to negatively impact his career by causing unemployment, economic loss, and professional humiliation due to mandatory disclosure requirements in the financial services industry.[6]

18. Most severely, Mr. Young remains under medical monitoring/treatment for chronic psychiatric distress and mental illness. His treating-physician determined that his psychiatric/psychological/physical injuries are a direct result of Defendant officers' willful and collective misconduct.[7]

19. Acting under the color of law, Defendants' acts and omissions violated Young's individual rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and, consequently, his civil rights. Mr. Young now brings this action under 42 U.S.C. § 1983 to seek redress for Defendants' violation of his constitutional rights.

---

[5] Exhibits 4-16.
[6] Mr. Young has lost multiple jobs based on the false charges. He seeks help to conceal the unlawful arrest records.
[7] Mr. Young suffers from mental illness related to chronic PTSD trauma.

**II. INDEX OF COUNTS**

**COUNT I**

| 42 U.S.C. § 1983 | AGAINST ALL DEFENDANT OFFICERS | FOR DELIBERATELY FABRICATING EVIDENCE TO FRAME MR. YOUNG IN VIOLATION OF THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE

**COUNT II**

| 42 U.S.C. § 1983 | AGAINST ALL DEFENDANTS | FOR RELIANCE ON FALSE STATEMENTS AND MATERIAL OMISSIONS IN AN APPLICATION FOR A WARRANT TO FORCIBLY EXTRACT AND EXAMINE MR. YOUNG'S BLOOD IN VIOLATION OF THE FOURTH AMENDMENT

**COUNT III**

| 42 U.S.C. § 1983 | AGAINST ALL DEFENDANTS | FOR RELIANCE ON FALSE STATEMENTS AND MATERIAL OMISSIONS IN A PROBABLE CAUSE AFFIDAVIT TO ERRONEOUSLY ARREST MR. YOUNG

**COUNT IV**

| 42 U.S.C. § 1983 | AGAINST ALL DEFENDANT OFFICERS | FOR RETALIATION AGAINST MR. YOUNG FOR QUESTIONING THE LEGITIMACY OF-AND HIS LEGAL OBLIGATION-TO KNOW WHY HE WAS DETAINED FOR A TRAFFIC STOP

**COUNT V**

| 42 U.S.C. § 1983 | AGAINST ALL DEFENDANT OFFICERS | FOR CIVIL CONSPIRACY

**COUNT VI**

| 42 U.S.C. § 1983 | AGAINST ALL DEFENDANTS | FOR FAILURE TO INTERVENE

**COUNT VII**

| 42 U.S.C. §§ 1983 & 1988 | AGAINST THE CTY OF IRVING | FOR FAILURE TO INTERVENE, SUPERVISE, MANAGE, AND DELIBERATE INDIFFERENCE | MONNELL LIABILITY

## A. JURISDICTION & VENUE

20. Mr. Young brings this action under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as authorized by 42 U.S.C. §§ 1983 & 1988. The Court has jurisdiction over Mr. Young's claims under 28 U.S.C. §§ 1331 (action arising under the Constitution and federal law) and 1343(a) (action to redress deprivation of civil rights).

21. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b)(1), in that DEFENDANTS reside in this district and all acts complained of arose in the Northern District of Texas. The amount in controversy exceeds $75,000 exclusive of interest and related costs.

## B. PARTIES

22. Plaintiff, DeRonnius Young, is a citizen of the United States who presently resides in Dallas, Dallas County, Texas. At the time of the incident, Plaintiff was a resident of the City of Irving, Dallas County, Texas, and a full-time college student at Southern Methodist University. Today, Plaintiff is thirty-two years old and works full-time as a commercial banking compliance officer.

23. The City of Irving ("Irving") is, and was at all relevant times mentioned, a municipality duly organized and existing under the laws of Texas. The Irving Police Department ("IPD") is an official subdivision of the city. All individuals employed by the IPD are employees of the city. The City of Irving was incorporated in 1914.

24. Further, the City is, and was at all times mentioned, engaged in owning, operating, maintaining, and doing business as the IPD for public service for residents of Irving, Dallas County. All of the acts and omissions complained of in this Complaint by Plaintiff against

Defendants were done and performed by them individually and/or in their relevant times they acted under the color of the law.

25. Moreover, the City and the policymaker ratified all of the acts of Defendants for which this Complaint is made.

26. The city of Irving operates IPD. The City funds IPD along with the Irving City Council, the Irving City Manager, and mayor, along with the Chief of Police are responsible for the implementation of their department's budgets, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The IPD and County are also responsible for preventative, investigative, and enforcement services for all citizens of the City of Irving, Dallas County, Texas.

27. The City of Irving may be served with citation herein by and through its agent of service of process, City Manager Chris Hillman, at City of Irving located at 825 W Irving BLVD Irving, TX 75060.

28. Upon information and belief, Sgt. Adam Landry ("Landry") is a resident of Texas. Defendant is being sued in his individual capacity. At all times relevant, Landry was acting under the color of law, that is, under the color of the statues, ordinances, regulations, policies, customs, and usages of the City. Landry may be served at the Irving Police Department, 305 N O'Connor Rd, Irving, TX 75061, or wherever he may be found.

29. Upon information and belief, Officer Andrew Hammett ("Hammett") is a resident of Texas. Defendant is being sued in his individual capacity. At all times relevant, Hammett was acting under the color of law, that is, under the color of the statues, ordinances, regulations,

policies, customs, and usages of the City. Hammett may be served at the Irving Police Department, 305 N O'Connor Rd, Irving, TX 75061, or wherever he may be found.

30.    The Specific identities of Defendants John and Jane Does ("Does") are currently unknown to Plaintiff. Accordingly, Plaintiff sues said Defendants by fictitious names. Plaintiff reserves the right to seek leave of the Court to amend the Complaint to include the names, identities, and capacities of the Does together with the proper charging allegations against them once the true names, identities, or capacities of said Defendants is determined. Upon information and belief, Does assisted in violations of 42 U.S.C § 1983.

## C. FACTUAL ALLEGATIONS

31.    Plaintiff incorporates and realleges herein by reference paragraphs 1-30 inclusive, as though set forth fully herein.

### I.    DCDAO Determined that Defendant Sgt. Landry Initiated an Unlawful Traffic Stop when He Lied about His Personal Observations of Mr. Young's Driving.

32.    During the summer of 2021, Mr. Young was a full-time college student at SMU-Dallas enrolled in a joint JD/MBA program. At the time, Mr. Young worked two jobs while attending summer school. His schedule was demanding, and he was under extreme stress to complete various work and class assignments.

33.    As a generous gesture, Mr. Young's friend asked to buy him dinner because he noticed how stressed Mr. Young had been over the last several weeks trying to maintain his competing commitments. So, Mr. Young and his friends had dinner at Bar Louie located at the Toyota Music Factory in Irving, Tx.

34.    On or about June 25th, 2021, around 12:30a, Sgt. A. Landry #1096 engaged his patrol vehicle lights as Young drove past him while exiting the parking garage at the Toyota Music Factory in Irving, Texas.

35.    Young, in compliance with the officer's request, pulled over and parked his vehicle in a parking spot behind Bar Louie to learn why Sgt. Landry requested his attention since Young had not violated any traffic laws.

36.    Young exited his vehicle and approached Sgt. Landry when he realized that the officer requested his attention.[8] Defendant Sgt. Landry then informed Mr. Young that he was detained because he was 'driving crazy while sounding his car horn.'[9]

37.    Mr. Young consistently maintained that he had not violated any law and had not driven his car in a manner that would put Defendant Sgt. Landry on notice of any potential criminal activity.[10]

38.    Therefore, Mr. Young relentlessly asserted his right to be free from government intrusion without legitimate reason when he constantly disagreed that Landry saw him "driving on the wrong side of the road multiple times, while sounding his car horn continually."

39.    The probability of detecting DWI by random traffic enforcement stops at night is only 3%.[11] An example of 'alcohol-impaired vigilance' results in driving into opposing or crossing traffic and turning in front of oncoming vehicles with insufficient headway.[12]

---

[8] Mr. Young consented to speak with Landry, even though he had not committed any violation.
[9] Mr. Young disagreed with Landry's lies at the outset.
[10] Landry lied in the arrest records to conceal his misconduct.
[11] NHSTA, Instructor Guide, *supra*, at 235.
[12] *Id*. at 40; Landry intentionally lied about Mr. Young's driving in order to defraud the magistrate judge.

40.     Study results show that when a motorist is going the wrong way in traffic, there is a good chance that the operator is under the influence[13] … drivers who drive the wrong way are 30%-50% more likely to be intoxicated.[14]

41.     Defendant Sgt. Landry willfully, purposely, and intentionally lied about what he saw Mr. Young doing before he initiated the traffic stop to justify is unlawful actions.

42.      Furthermore, Defendant Officers acted willingly and purposely by helping Defendant Sgt. Landry frame Mr. Young for DWI, Resist Arrest, and Failure to ID.

43.     Specifically, Defendants Sgt. Landry and Hammet defrauded the majistrate judge by falsely reporting, in the probable cause application, investigation reports, and supporting affidavits that Defendant Landry **'observed'** Mr. Young commit the following unlawful acts, in which they swore to the judge, that the below behaviors triggered  the  **initial** **trafffic stop**, **resulting arrest,  and DNA extraction**:[15]

   a) Sgt. Landry observed a gray 2015 Nissan Altima (MLD2214) driving WEST in the EAST bound lanes, while honking his horn.[16]

   b) The vehicle went through the parking garage while honking its horn and exited headed <u>EAST</u> in the <u>WEST</u> bound lanes on Melody Way.[17]
   c) Sgt. Landry could smell the odor of an alcoholic beverage coming from Defendant's breath.
   d) The Defendant refused to perform any SFSTs.
   e) Based on Defendant's driving behavior, the smell of an alcoholic beverage on his breath, and his actions during our interaction, it was determined that the Defendant had lost the normal use of his mental and physical faculties, due to the introduction of some substance in his body and was intoxicated.[18]

---

[13] NHSTA, Instructor Guide, *supra*, at 262.
[14] *Id*. at 263.
[15] Exhibits 1-17.
[16] The DCDAO determined that there was no evidence to support Landry's false observations.
[17] *Id*.
[18] *See Id*.

f) The Defendant [Mr. Young] was placed under arrest and read the DWI statutory warning.

44.    Specifically, Defendants Landry and Hammet, in collaboration with Does, secured a probable cause warrant by lying about the reasons that Mr. Young was stopped and arrested.[19]

45.    As a result, the magistrate judge relied on the intentionally fabricated evidence to approve the arrest warrant, DNA extraction, and detention of Mr. Young, which triggered the City of Irving to initiate criminal charges against Mr. Young, authorize DNA extraction, and the resulting arrest.[20]

46.    More importantly, the criminal court has already reviewed all relevant evidence and determined that there was no evidence to support Defendant officers' false claims.

47.    Thus, all criminal charges against Mr. Young were dismissed by the District Attorney for 'failure to establish prima facie' in April 2023.

**Exhibit 1: Criminal charges filed based on false reports**

---

[19] Exhibits 1-17.
[20] The City of Irving controls and manages Irving PD and its administrative processes.

y

**PLAINTIFF'S 1ST AMENDED COMPLAINT**                    **12**

The State of Texas vs. DERONNIUS RASHAD YOUNG

DOB: 12/17/1991    Sex: Male    Race: Black

CCC5



| Offense | Agency |
|---|---|
| DRIVING WHILE INTOXICATED | TX0571500 |

INFORMATION NO: M2134159

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:

Comes now the Criminal District Attorney of Dallas County, on behalf of the State of Texas, and presents in and to the County Criminal Court No. 5 of Dallas County, State aforesaid, that

**DERONNIUS RASHAD YOUNG**, hereinafter called Defendant,

**on or about the 25th day of June, 2021** in the County of Dallas, State of Texas, did then and there operate a motor vehicle in a public place while intoxicated,

Against the peace and dignity of the State.

*John Creuzot*
John Creuzot
Criminal District Attorney
Dallas County, Texas

**Exhibit 2: Falsified probable cause application approved by judge[21]**

I believe this information furnished by a fellow Peace Officer is credible.

WHEREFORE, Affiant requests that an arrest warrant or capias be issued for the above accused individual(s) in accordance with the law.

_____
AFFIANT

SWORN TO BEFORE ME on the 25th day of June, 2021.

_____
Magistrate / Notary Public / Peace Officer pursuant to 602.002 Texas Government Code
**(Cross out inapplicable authorities)**

MAGISTRATE'S DETERMINATION OF PROBABLE CAUSE

On this the 25th day of June, 2021, the undersigned Magistrate hereby acknowledges that he has examined the above affidavit and has determined that probable cause exists for the issuance of a capias for the individual(s) accused therein and hereby orders the Clerk of the Court of proper jurisdiction to issue a capias for the arrest of said individual(s).

_____
MAGISTRATE, IN AND FOR

**Exhibit 3: All charges terminated by criminal court[22]**

---

[21] Landry and Defendant officers knew that their intentional lies would defraud the magistrate.
[22] DCDAO held that there was no evidence to support reasonable suspicion or probable cause.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**                    **13**

NO. M2134159

| THE STATE OF TEXAS | § | IN THE COUNTY CRIMINAL COURT |
| | § | |
| VS. | § | COURT |
| | § | |
| DERONNIUS YOUNG | § | DALLAS COUNTY, TEXAS |

FILED

JOHN F. WARREN, COUNTY CLERK

APR 1 8 2023

COUNTY CRIMINAL COURT
DALLAS COUNTY, TEXAS

BY_____ No._____ DEPUTY

## MOTION TO DISMISS PROSECUTION

### TO THE HONORABLE JUDGE OF SAID COURT:

Now comes the District Attorney of Dallas County, Texas and asks the Court to dismiss the above entitled and numbered cause, for the following reasons, to-wit:

This case was filed by the IRVING PD. The State will be unable to make a prima facie case.

WHEREFORE PREMISES CONSIDERED, the State respectfully requests that this case be dismissed.

### ORDER OF DISMISSAL

The foregoing motion is granted on the _____18_____ day of April, 2023.

_____
County Criminal Court Judge

_____
Assistant District Attorney of
Dallas County, Texas

_____
for John Creuzot
District Attorney of Dallas County, Texas

**Exhibit 4: Falsified Probable Cause Warrant[23]**

---

[23] Defendant officers knew that their intentional lies would defraud the magistrate judge.

**PLAINTIFF'S 1ST AMENDED COMPLAINT** 14

**STATE OF TEXAS**
**COUNTY OF DALLAS**

CASE NO. 210013584 – ORIG

#### AFFIDAVIT FOR DETERMINATION OF PROBABLE CAUSE

Before me the undersigned authority on this day personally appeared  HAMMETT, ANDREW #1263  ,

a peace officer for the State of Texas, who after being duly sworn upon oath deposes and says that he has

good reason to believe and does believe that  YOUNG, DERONNIUS RASHAD  did
(name of accused)

commit the offense of DRIVING WHILE INTOXICATED  PC 49.04  against

the laws of the State of Texas on  June 25, 2021  .

Said reason and belief is based upon the following facts and circumstances (provide narrative, using back of this affidavit or attaching additional pages and/or case report, as needed):

On 06/25/2021 at around 12:30 am, Sgt. A. Landry #1096 observed a gray 2015 Nissan Altima (MLD2214) driving West in the East bound lanes, while honking his horn, on Harmony Way in Irving. The vehicle then went through a parking garage while honking its horn and exited headed East in the West bound lanes on Melody Way. Sgt Landry conducted a traffic stop at 360 W Las Colinas Blvd, Irving, Dallas County, Texas. The Defendant, later identified by TXDL 45444124, as Deronnius Rashad Young exited the vehicle and immediately began verbally resisting and trying to walk away. The Defendant gave his name as John Doe with no date of birth. Sgt. Landry could smell the odor of an alcoholic beverage coming from the Defendant's breath. The Defendant physically resisted detention and arrest. The Defendant refused to perform any SFSTs. Based on the Defendant's driving behavior, the smell of an alcoholic beverage on his breath, and his actions during our interaction, it was determined the Defendant had lost the normal use of his mental and physical faculties, due to the introduction of some substance into his body, and was intoxicated. The Defendant was placed under arrest and read the DWI statutory warning. The Defendant had an active warrant for assault from DSO (M2170655), failed to identify himself, and gave a false name.

Witness my signature this  25  day of  June  , 2021

_____#1263  Irving Police Department
Affiant  Agency

Subscribed and Sworn to before me this the  25  day of  June  , 2021

BRADLEY GEORGE
My Notary ID # 129553180
Expires September 10, 202_

Magistrate / Notary Public / Peace Officer pursuant to 502.002 Texas Government Code
(Cross out inapplicable authorities)

#### ORDER

The foregoing **affidavit / attached arrest report** having been presented to me and upon consideration of the facts and circumstances contained therein, it is hereby determined that probable cause exists to believe the accused has committed the offense. Therefore it is accordingly ordered that the above named accused remain in custody.

_____
Magistrate, City of Irving, Dallas County, Texas

JUNE 25  , 2021  3:00  AM / PM
Date  Time

Complete one affidavit per offense

## II. Mr. Young Questioned Defendant Landry's Conduct, and Landry Retaliated by Spontaneously Arresting Him.

48.    Mr. Young repeatedly agreed to comply with Defendant Landry; however, he was unwilling to admit to Landry's false claims that he observed Mr. Young *'driving on the wrong side of the road multiple times, while honking his horn continually.'[24]*

49.    Afraid for his safety because he was unlawfully detained under false impressions of the law, Young dialed 9-11 for a "supervisor" to come to the scene and help since Sgt. Landry refused to establish a valid claim of Young's violation of the law.[25]

50.    Sgt. Landry then informed Young that he was in fact the supervisor; implying that he was the supreme authority present at the scene.[26]

51.    When the mob of officers arrived at the scene, they immediately attacked Young based on Landry's lies, shot him repeatedly with stun guns, as they beat him to the ground in a routine fashion.

52.    As the supervisor, and supreme authority, Landry's power and direct instructions emboldened every officer present to act collectively with routine agreement, in violation of Young's rights, liberties, and civil dignities.

53.    All Defendants knew they did not have reasonable suspicion or probable cause to arrest Mr. Young for DWI.[27]

54.    Defendant Hammet even contradicted Landry's claims of a strong alcohol odor, yet none of the officers intervened to stop the retaliatory arrest.

---

[24] Exhibits 1-17.
[25] Mr. Young called 9-11 because it was obvious that Defendant Sgt. Landry had bad intentions.
[26] Landry directed Hammet to Lie, while Defendant Does explained what to say in the sworn documents to successfully defraud the magistrate judge.
[27] Defendant Hammet admitted that he did not observe any intoxicating behaviors, but lied anyway to support Landry.

55. After arresting Mr. Young and placing him in the squad car, Defendants Landry, Hammet, and Does closed the door to briefly huddle together out of earshot. Prior to huddling, Defendants Landry/Hamet/Does appear to have turned off their individual microphones.

56. Curtis Hargis, Dallas County public Defender, informed Mr. Young that after reviewing the omitted evidence, he discovered that the "female officer" orchestrated the DWI sham. The final reports were not submitted until after 3:00a.

57. At the time Defendant Landry initiated the traffic stop with Mr. Young, he lacked reasonable suspicion.

58. At the time Defendants arrested Mr. Young, they lacked probable cause because they willingly relied on Defendant Landry's false statements about Mr. Young's driving behavior.

59. At the time they arrested Mr. Young, they lacked probable cause to believe that he had committed a DWI offense.

60. At the time they arrested Mr. Young, they lacked probable cause to obtain a warrant to forcibly extract and examine his blood.

61. Due to shock and the excessive force of the officers' shooting and beating him relentlessly, Young entered a subconscious state of mind triggered by the trauma of the beating. Young was rendered incoherent after suffering from the unexpected brutalities brought on by Landry and his gang of officers.[28]

---

[28] Even though Mr. Young called 9-11 responding officers immediately tazed and arrest him at Landry's direction.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**

### III. **Defendants Landry, Hammet, and Does Deliberately Fabricated Evidence to Frame Mr. Young.**

*A. Defendants submitted Falsified Affidavits Seeking a Search Warrant to Extract and Examine Mr. Young's Blood.*

62. Defendants submitted--under Defendants Landry and Hammet's names--sworn affidavits for a warrant to extract Mr. Young's blood. They submitted it to Judge Christopher Austria, magistrate, Dallas, County, Texas.

63. Defendants Landry and Hammet swore an oath that all statements contained in the affidavit were true.

64. However, the affidavit hinged on multiple falsehoods that all Defendant officers knew were untrue.

65. ***Driving behavior falsehoods:*** The affidavit states that Mr. Young was *"driving on the wrong side of the road multiple times while **continually** honking the horn."*

**Exhibit 5: Falsified DWI documentation**

6. **Driving behavior:** Additional facts leading me to believe that the suspect was intoxicated while operating a motor vehicle or watercraft in a public place include: Was driving on the wrong side of the road multiple times while continually honking the horn.

the public place is described as: 360 W Las Colinas Blvd, Irving, Dallas County, Texas

66. However, Defendant Landry <u>did not</u> at any point in time witness Mr. Young driving on the wrong side of the road.

67. In fact, the criminal court determined that there was no evidence to support Landry's claims that he 'observed' Mr. Young driving on the wrong side of the road before he initiated the traffic stop.

68. Indeed, Mr. Young conceded to sounding his car horn, but has never conceded that he used his car horn in a manner that was unlawful or potentially criminal. He also was not sounding his horn in the manner Landry falsely described.

69. Furthermore, the criminal court terminated all charges because Defendant Landry failed to prove that he 'witnessed' or 'observed' Mr. Young engage in suspicious or unlawful behavior before he initiated the traffic stop.

70. Thus, the criminal court has already established that Landry failed to prove reasonable suspicion/probable cause for initially detaining Mr. Young.

71. ***Odor of alcohol falsehoods:*** The affidavit states that Defendant Landry smelled a strong odor of alcohol on Mr. Young's breath, even though Defendant Hammet's sworn statements contradicted Landry when he denied the smell of alcohol coming from Mr. Young. Moreover, there was no evidence found to support Defendants' claims for alcohol odor.

72. Even though Defendant Hammett admitted that he did not smell any kind of alcohol odor, he willingly corroborated Landry's false statements by relying on them in his reports to wrongfully extract blood samples from Mr. Young.

**Exhibit 6: Falsified Police Reports**

**Odor of alcohol**
- ☑ Strong
- ☐ Moderate
- ☐ Faint
- ☐ None

<u>**Exhibit 7: Falsified Police Reports (2)[29]**</u>

# Incident Report
# Irving Police Department

**21-13584**   Supplement No
ORIG

**Narrative**

While interacting with Young, Sgt Landry said he could smell a strong odor of an alcoholic beverage on Young's breath. I had recently been sick and was still very congested, so I was not able to smell anything at the time.

73.   After initiating the stop, Defendant Landry did not ask Mr. Young whether he had been drinking. Furthermore, Landry never told Mr. Young he was suspected of intoxication.

74.   Still, even though Defendant officer Hammet knew that he did not observe any signs of intoxication, he willfully complied with Defendant Sgt. Landry to submit false reports (see above).

75.   There is no documentation stating that any other officer witnessed or observed Mr. Young exhibit intoxicating behaviors.

76.   Regardless of the [actual] evidence that may have come to light prior to the stop, the initial face-to-face contact with the driver provides the first definite indications of impairment.[30]

---

[29] Landry clearly denies ANY DWI observations.
[30] NHSTA, Instructor Guide, *supra*, at 269.

77. DWI Suspicion is based on (1) face-to-face interview, (2) driving observations, and (3) the stopping sequence.[31] Proper face-to-face observation and interview of the driver requires (1) the ability to recognize sensory evidence of alcohol and (2) the ability to describe that evidence clearly and convincingly.[32]

78. Instead, all Defendant officers knowingly relied on Landry's false statements that he had witnessed Mr. Young *"driving on the wrong side of the road multiple times, while honking his horn continually."* In addition to his false statements that he 'smelled a strong alcohol odor' coming from Mr. Young.

79. ***Attitude/Conduct falsehoods:*** The affidavit states that Mr. Young was argumentative, combative, talkative, and excited.[33]

80. Conversely, the probable cause application contradicts those claims and states that Young 'refused to communicate.'

81. Nevertheless, it is reasonable for a person to reject false claims made against them, which Mr. Young did at the outset, and in return, Defendants framed him for DWI. The law does not require Mr. Young, or any other citizen, to admit to false accusations.

**Exhibit 8: DWI Documentation[34]**

| Attitude/conduct | |
| --- | --- |
| ☑ Argumentative | ☐ Calm |
| ☑ Combative | ☑ Talkative |
| ☐ Profane | ☐ Anxious |
| ☐ Sarcastic | ☑ Excited |
| ☐ Insulting | |

---

[31] *Id.*
[32] *Id.* at 276.
[33] It is reasonable to disagree with false accusations.
[34] Defendant officers fabricated material evidence to defraud the magistrate.

**Exhibit 9: DWI Documentation**

10. Suspect's oral statements: The suspect made the following statements: The Defendant refused to cooperate and would not answer any questions.

**Exhibit 10: DWI Documentation**

13. Refusal Evidence: After placing the suspect under arrest and reading the DIC-24/DIC-24S (Statutory Warning), I requested a sample of the suspect's breath and/or blood, and the suspect:

☑ refused to provide a sample of breath and/or blood.

**Exhibit 11: DWI Documentation**

**Horizontal Gaze Nystagmus Test**
The suspect was first qualified as a candidate by checking the suspect's eyes for equal tracking and equal pupil size. The following clues were present in the left eye (L) and right eye (R):

☐ L ☐ R   Lack of smooth pursuit
☐ L ☐ R   Distinct and sustained nystagmus at maximum deviation
☐ L ☐ R   Onset of nystagmus prior to 45 degrees

Vertical nystagmus:   ☐ YES ☐ NO
HGN: Total number of observed clues: _____
☑ Refused to perform test
☐ Unable to perform test because:_____

82.     ***Implied consent falsehood / HGN falsehoods:*** The affidavits state that Mr. Young refused to participate in SFSTs, even though at no time while Mr. Young was conscious and responsive did officers ask Mr. Young to participate in FSTs. Mr. Young has no recollection of being asked to take FSTs.[35]

83.     After Defendants realized they had violently tazed and arrested Mr. Young without cause, they coordinated to frame him for DWI refusal to conceal and justify Landry's false statements about why he initiated a traffic stop in the first place.

---

[35] Tex. Trans. Code. § 724.014(a).

84. A person who is dead, unconscious, or otherwise incapable of refusal is considered not to have withdrawn consent.[36]

85. Dallas County Public Defender, Curtis Hargis, reviewed the omitted evidence and discovered that a 'female officer' initiated the DWI scheme to corroborate Landry's lies.[37]

86. The statute requires that the officer "have reasonable grounds to believe the person … while intoxicated was operating a motor vehicle.[38]

87. Therefore, the [arrest] decision is based wholly on performed SFSTs, and all other clear and convincing evidence actually observed by an officer. Then, they decide whether there is sufficient probable cause to arrest for DWI suspicion. Thus, the <u>entire arrest</u> culminates in the arrest decision.[39]

88. This includes (1) observations of the vehicle in motion; (2) behavior during the stopping sequence; face-to-face observations, and (3) pre-arrest screening.[40]

89. As laid out above, Defendant Sgt. Landry never witnessed Mr. Young *'driving on the wrong side of the road multiple times, while honking his horn continually.'*

90. Moreover, no other officer on the scene agreed that they smelled a '*strong alcohol odor*.' In fact, Defendant Hammet contradicted Landry's claim in the arrest records.

---

[36] *Id*.
[37] *See* Criminal Defense Attorney's LOE
[38] Tex. Trans. Code. § 724.012(a)(1).
[39] NHSTA, Instructor Guide, *supra*, at 12.
[40] NHSTA, Instructor Guide, *supra*, at 12.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**

91.     Nevertheless, all Defendants willingly relied on Landry's lies; therefore, Defendants were aware that they did not have "reasonable grounds" to believe he was intoxicated.

**Exhibit 12: Arrest decision based on materially false statements[41]**

**Standardized Field Sobriety Tests:**

While Young was in the back of my squad car, but pretending to be unconscious, I gave young the opportunity to participate in the HGN test. Young continued to pretend to be unconscious and would not perform the SFSTs.

**Arrest Decision:**

Based on Sgt Landry's observation of Young's driving behavior, the smell of an alcoholic beverage on Young's breath, and Young's resistive behavior, we determined Young did not have the normal use of his mental or physical faculties due to the introduction of some substance into his system, impairing his ability to operate a vehicle safely. Young was arrested as he was intoxicated in a public place while operating a motor vehicle and was a danger to himself as well as others. Young was taken into custody at 0041 hrs.

**Exhibit 13: IPD's Internal Investigation based on false statements[42]**

---

[41] Defendant officers submitted a false narrative to defraud the magistrate judge.
[42] Sgt. Jo Phillips 'facilitates' the internal investigations process on behalf of the City of Irving. He confirmed that his investigation was based on the evidence submitted to DCDAO. The City of Irving retains control of officer conduct and manages IPD's organizational processes, including IPD internal Affairs.



**Exhibit 14: IPD's Internal Investigation based on false evidence**



**Exhibit 15: Defendant Landry has a history of misconduct[43]**

---

[43] Witnesses are prepared to testify about Defendant officers' perpetual misconduct.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**            **25**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

RECEIVED

AUG 27 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED-USDC-NDTX-DA
'24 AUG 27 av10:53

filed in error

Deronius R. Young
Plaintiff

v.

The City of Irving
Defendant

Case Number

3:3023-cv
01423
filed 6/26/23

Adam Landry, Andrew Hammett,
John Doe, Jane Doe & Jeff Spivex

Is Deronius R. Young African American?
Are all defendants White?
Janet Napolitano is the Chief legal
Counsel who was no assigned to me by the
UC Regents to protect my assets. I own
DFW + we are going to headquarter Hilton
in Fort Wuerth, + we're considered about our
neighbors because I had an an incident
with Hammett + may know who
Jane + John Doe
are.

* Attach additional pages as needed.

Date ___August 27th 2024___

Signature ___L Spurs___

Print Name ___Lisa G. Spiers___

Address ___125 E. John Carpenter Fwy #300___

City, State, Zip ___Irving TX 75062___

Telephone ___510-987-9074___

**PLAINTIFF'S 1ST AMENDED COMPLAINT** 26



**DALLAS COUNTY**
PUBLIC DEFENDER'S OFFICE

133 N. Riverfront Blvd. ↙ LB 2
Dallas Texas 75207-4313
Phone: (214) 653-3550 ↙ Fax: (214) 653-4399

June 1, 2023

*Re:* ***Deronnius Young***

To Whom It May Concern,

I am writing this letter in rebuttal to or in expectation of a criminal background check of Mr. Deronnius Young. I represented Mr. Young in defense of the charges The State of Texas brought against him in Dallas County during May and June of 2021. I would like to begin by stating that before the time of his arrest, Mr. Young had a clean record, meaning zero arrests and zero convictions. The same is true for the time after his arrests.

All five of the charges brought against Mr. Young in May and June of 2021 were dismissed by the District Attorney. The burden of proof for a police officer to arrest a person is quite low and does not infer guilt or innocence. It is the job of the District Attorney to vet the cases and prepare them. It these cases the DA determined there was insufficient evidence to prosecute any of the charges levelled against Mr. Young.

By law in Texas a citizen who has charges dismissed must wait two (2) years before he can expunge the charges and clear his record. Mr. Young is eligible for this process and may clear his name in April of 2025. Due to these factors, Mr. Young, for all intents and purposes, still has a clear criminal history.

If there is anything further I can do to assist Mr. Young with this process, please feel free to reach out to me.

Sincerely,
Curtis K. Hargis
Assistant Public Defender
Dallas County
(214) 651-4501
curtis.hargis@dallascounty.org

92.     However, after Defendants had tazed and arrested Mr. Young, without reason and at Landry's request, they pretended to attempt a FST while Mr. Young was subconscious in a squad car and mentally incoherent after being violently tazed.[45]

---

[44] Mr. Young begged DCDAO for this letter of truthful determination after he was fired based on his criminal background. Young's falsified criminal record automatically disqualifies him from employment in the financial services industry. He is also perpetually subject to mandatory disclosure of the falsified record.

93.     Mr. Young was unaware that he was being framed for DWI until he was at the hospital and told to sign papers saying that he 'refused to perform SFSTs.'

94.     Defendant officers lied about following procedure and framed Mr. Young. The detection process ends only when the officer formulates the decision either to arrest or not arrest the individual for DWI. That decision is based on all of the accumulated evidence. Effective DWI enforcers do not leap immediately to the arrest/no arrest decision. Rather, they proceed carefully through a series of intermediate decisions, each of which can elicit evidence.[46]

95.     Nevertheless, Defendant officers successfully framed Mr. Young and forced a blood extraction by falsely reporting that he refused to participate in SFSTs in order to justify Landry's unlawful detention of Mr. Young.

96.     At no time during Landry's unlawful traffic stop did he attempt to (1) ask Mr. Young if he had been drinking or (2) ask Mr. Young to participate in FSTs.

97.     Instead, all Defendant officers relied on Landry's false statements about Mr. Young's driving and the presence of a 'strong' alcohol odor.

98.     Nonetheless, the officers conspired to frame Mr. Young with DWI after they unlawfully detained, tazed, and arrested him.

99.     All Defendant officers corroborated Landry's lies because he directed them to arrest Mr. Young, even though he knowingly detained Mr. Young in bad faith.

---

[45] Tex. Trans. Code. § 724.012(a)(1).
[46] NHSTA, Instructor Guide, *supra*, at 26.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**                                        **28**

100.    All officers agreed to arrest Mr. Young based on material falsifications, which they noted in their arrest decision and probable cause application.[47]

101.    Despite all officers on the scene, not one officer stated that they personally observed Mr. Young present intoxicating behaviors. Instead, Landry's material falsifications served as the main reason to detain, taze, arrest, and extract Mr. Young's DNA.

102.    The DWI detection process concludes with the arrest decision. This decision is based on all of the evidence obtained during all three detection phases: on observation of the vehicle in motion and during the stopping sequence; on the face-to-face observation of the subject and the subject's exit from the vehicle; and pre-arrest screening.[48]

**Exhibit 17: The magistrate judge approved affidavits, police reports, & warrant applications that were all based on the same materially and intentionally misleading false statements**

IRVING POLICE DEPARTMENT - CASE REPORT - PAGE 2

Case Summary:
On 06/25/2021 at around 12:30 am, Sgt. A. Landry #1096 observed a gray 2015 Nissan Altima (MLD2214) driving West in the East bound lanes, while honking his horn, on Harmony Way in Irving. The vehicle then went through a parking garage while honking its horn and exited headed East in the West bound lanes on Melody Way. Sgt Landry conducted a traffic stop at 360 W Las Colinas Blvd, Irving, Dallas County, Texas. The Defendant, later identified by TXDL 45444124, as Deronnius Rashad Young exited the vehicle and immediately began verbally resisting and trying to walk away. The Defendant gave his name as John Doe with no date of birth. Sgt. Landry could smell the odor of an alcoholic beverage coming from the Defendant's breath. The Defendant physically resisted detention and arrest. The Defendant refused to perform any SFSTs. Based on the Defendant's driving behavior, the smell of an alcoholic beverage on his breath, and his actions during our interaction, it was determined the Defendant had lost the normal use of his mental and physical faculties, due to the introduction of some substance into his body, and was intoxicated. The Defendant was placed under arrest and read the DWI statutory warning. The Defendant had an active warrant for assault from DSO (M2170655), failed to identify himself, and gave a false name.

---

[47] *See* Exhibits 9-13.
[48] NHSTA Instructor Guide, *supra*, at 298.

103. **_Material omissions:_** In addition to the falsehoods described above, the affidavit omits numerous material and exculpatory facts to undercut probable cause. Those omissions include:

a) Defendants did not follow DWI detection protocol for observations, pre-screening, and arrest decisioning.

b) Defendants did not conduct an HGN test.

c) The HGN test is the most reliable field sobriety test.

d) Mr. Young did not slur his speech.

e) Mr. Young repeatedly insisted on complying with all <u>lawful</u> commands.

f) No other Officers identified intoxicating behaviors during face-to-face observation with Mr. Young.

g) Defendant Landry did not observe what he swore to the magistrate judge.

h) Mr. Young did not exhibit sufficient clues to permit an inference of intoxication impairment.

i) Mr. Young's eyes were clear, not red or glassy.

j) Defendant Landry did not ask Mr. Young if he had been drinking.

k) Mr. Young's clothing was orderly.

l) No officer on the scene observed evidence that Mr. Young was intoxicated or impaired.

m) Defendant officers successfully destroyed, materially altered, and omitted exculpatory evidence.

n) Preliminary Breath Tests do not indicate the level of impairment. Rather, by detecting the presence of alcohol, they can only help identify the chemical source of an already-observed impairment.

o) It is reasonable to disagree with false accusations.

p) As Defendants were handcuffing Mr. Young and he asked why he was being arrested, Defendants did not say for DWI. Rather, they responded, "you'll know when I want you to know."

104. Had any of the omitted, exculpatory evidence been included, Defendants' affidavits would not have established probable cause for a search warrant to forcibly extract and examine Mr. Young's blood or to arrest him.

105. Despite those falsehoods and omission, Defendants swore that everything contained in the affidavits were true.

106. Defendants then submitted the affidavits to the City of Irving Municipal magistrate judge as an application for a search warrant to forcibly extract and examine Mr. Young's blood.

107. On information and belief, Defendant officer Hammett prepared and submitted the false affidavits at the direction of Defendant Sgt. Landry, and in coordination with Defendant officer Does, based on Landry's intentionally false statements.

108. The magistrate judge signed the warrant.

109. Shortly afterwards, Mr. Young was transported to a local Irving hospital, where Defendants oversaw the forcible extraction of multiple vials of Mr. Young's blood, which they then submitted for examination by a government agent.[49]

D. **At Landry's Direction, Defendant Officers Lied to the Dallas County District Attorney's Office to Mislead It into Prosecuting Mr. Young.**

110. In addition to creating false evidence in the forms of the aforementioned police paperwork, probable cause application, and affidavits, Defendants lied to Irving municipal court and the Dallas County District Attorney's Office (DCDAO).

---

[49] The criminal court would later terminate all prosecution for lack of probable cause/reasonable suspicion.

111. After arresting Mr. Young, submitting the fabricated affidavit for a blood extraction warrant, and forcibly extracting Mr. Young's blood, Defendant Officers contacted the Assistant District Attorney responsible for screening arrests and deciding whether to initiate prosecutions.

112. On information and belief, Defendant Officers told the magistrate the same false statements, and omitted the same exculpatory facts, as he did in the affidavit for a blood extraction warrant and their investigation reports.[50]

113. On information and belief, Defendant Hammet did so at the direction of Defendant Landry, and in coordination with Defendant Does.

114. Based on Defendant Landry's false account, DCDAO agreed to accept the case and prosecute Mr. Young in Dallas County District Court for the offense of felony DWI/Resist Arrest, and Failure to ID.

115. Mr. Young remained in police custody and jail from approximately 12:30am on Friday, June 25th, to approximately 7:30am on Monday, June 28.[51]

### E. **Defendants Submitted a (Second) False Affidavit to Mislead the Court into Finding Probable Cause for the Charged Offense, Imposing Onerous Conditions of Pretrial Release, and Delaying Dismissal of the Unsupported Charge.**

116. In Dallas County, after a person is arrested, their case is presented to a magistrate known as a Criminal Law Hearing Officer. That magistrate assesses whether a sworn affidavit submitted by an officer establishes probable cause for the charged offense. If the magistrate finds

---

[50] See Exhibits 1-14.
[51] Mr. Young is a 32yr old Black man and this is his first and only arrest incident.

probable cause, they then consider the allegations in the affidavit along with other factors to decide whether to order detention or impose conditions of release.

117. After DCDAO determined that it would prosecute Mr. Young, his case was scheduled for a probable cause review by a magistrate.

118. The affidavit reviewed by the magistrate in Mr. Young's case was sworn to and submitted by Defendants Hammett/Landry/Does. Defendants submitted that affidavit under penalty of perjury via the District Attorney Intake Management System (DIMS), knowing that a prosecutor and magistrate would rely on it for purposes of assessing probable cause and making a decision about detention and/or conditions of release. They also did so knowing that, at some point, a defense attorney would rely on it to make arguments about detention and/or conditions of release.

119. This second sworn statement by Defendants Hammet and Landry repeated the statements they and the other Defendants knew were false and omitted the exculpatory statements they knew were true, mirroring the affidavit for a blood extraction warrant that he previously submitted to the magistrate and the report they he submitted. It was also consistent with the report submitted by responding officers.

120. Had Defendants submitted an affidavit that excluded the falsehoods and included the exculpatory information, the Dallas County District Attorney's Office would not have proceeded with the prosecution. And even if it had, the magistrate would have found no probable cause.

121. However, rather than review a truthful and complete affidavit, the magistrate reviewed a false and misleading one prepared by Defendant Hammet, at Defendant Landry's direction, in coordination with Defendant officer Does.

122. The magistrate's review of Defendants' sworn statements occurred ex parte, without either Mr. Young or a defense attorney present.

123. As a result of Defendants' deliberate inclusion of falsehoods and omission of exculpatory information, the magistrate found the existence of probable cause for the charged felony offense.

124. As a result of Defendants' deliberate inclusion of falsehoods and omission of exculpatory information, the magistrate imposed a series of intrusive and burdensome obligations by which Mr. Young was required to abide as conditions of release during the 2yr long pendency of his case:

   a) Mr. Young was ordered to submit to supervision by Dallas County pre-trial services;

   b) Mr. Young was ordered to report to Dallas County Pretrial Services in person from 2021-2023;[52]

   c) Mr. Young was restricted from interstate travel;

   d) Mr. Young was required to make weekly reports to a bail bondsman who was acting in the government's interest.

125. But for Defendants' inclusion of falsehoods and omission of exculpatory facts in the affidavit submitted to the magistrate, the magistrate would not have imposed such restrictive and burdensome conditions of release.

---

[52] He missed exams, work, and lost jobs because of excessive absence for copious court appearances.

126. Those conditions remained in force for the 24 months that the felony prosecution remained pending.

### F. At Landry's Direction, and in collaboration with Does, Defendant Hammet Submitted a False Investigation Report.

127. In addition to the false affidavits, Defendant Hammet, at Landry's direction, and in collaboration with Does, submitted false investigation reports that mirrored the affidavits because they recited the same material falsehoods in both reports.

128. The report states that Landry initiated a traffic stop with Mr. Young after observing him '*driving on the wrong side of the road multiple times, continually*'[53].

129. Although Hamet's report denies smelling any presence of alcohol on Mr. Young, he stated that he relied on Landry's sensory to determine that Mr. Young emitted a 'strong alcohol odor on his breath.'[54]

130. The investigation report also states that Mr. Young refused to cooperate with any SFSTS, even though Landry did not discuss intoxication with Mr. Young before officers tazed, handcuffed him, and put him in the back seat of a patrol car. [55]

### IV. Mr. Young Sufficiently States a § 1983 Claim for First, Fourth, and Fourteenth Amendment Violations Based on the Defendants' Willful/Collective Acts to Successfully Defraud the Magistrate Judge by Falsifying the Warrant Applications/Affidavits/Reports.

---

[53] *See* Exhibits 1-16
[54] *Id.*
[55] *Id.*

131. A Plaintiff makes out a § 1983 claim for constitutional deprivation when he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law'."[56]

132. In the present case, Mr. Young has already proven that, while acting under the color of the law, Defendant officers purposely lied to the magistrate judge about Plaintiff's driving, FST refusal, and their observations of Mr. Young's physical behavior that allegedly alerted them to DWI suspicion.

133. Defendant Landry violated Mr. Young's Fourth Amendment rights to be free from unreasonable search and seizure when he purposely initiated a traffic stop knowing that he did not have reasonable suspicion to detain Mr. Young.[57]

134. So, he lied about his observations of Mr. Young's driving behavior. Consequently, the criminal court terminated all cases because there was no evidence to support Landry's false claims that he *'observed Mr. Young driving on the wrong side of the road multiple times, while sounding his horn continually.'[58]*

135. Landry acted in bad faith when he purposely lied and intentionally misrepresented the facts of his observations to justify unlawfully detaining Mr. Young.[59]

---

[56] *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).
[57] *See* Exhibits 1-13, Landry intentionally lied about his reasons for stopping Mr. Young.
[58] *Id*. DCDAO's determination is dispositive.
[59] In justifying a particular intrusion, police officers must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion; facts must be judged against objective standard of whether facts available to officer at moment of seizure or search would warrant man of reasonable caution in belief that action taken was appropriate. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, (1968). Intrusions upon constitutionally guaranteed rights must be based on more than inarticulate hunches, and simple good faith on part of officer is not enough. *Terry*, 392 U.S. 1, 88 S. Ct. 1868 (1968).

136. Defendant Sgt. Landry violated Mr. Young's First/Fourth Amendment rights when he lied to officers about what he observed during the pre-screen/detection phases of the DWI suspicion process.[60]

137. Additionally, Defendant officers willfully complied with Landry, they even assisted him in falsifying the probable cause applications and supporting affidavits.

138. No citizen is required to consent to, submit to, or agree to false accusations.[61] The Supreme Court has long held that the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.[62]

139. The freedom of individuals to verbally oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.[63]

140. Plainly, Defendant Sgt. Landry retaliated against Mr. Young when he refused to concede to Landry's false accusations.[64]

141. It is unreasonable for an officer to intentionally lie in order to prosecute a citizen.[65] Even so, whether reasonable suspicion exists is a question for a jury.[66] Nevertheless, in

---

[60] *See* Exhibits 1-13, Landry intentionally lied about his reasons for stopping Mr. Young.

[61] It is well-known that the First Amendment permits freedom to deny false accusations.

[62] *Davis v. Young*, No. 3:22-CV-439-TSL-RPM, 2024 WL 1975468, at *6 (S.D. Miss. May 3, 2024).

[63] *Id*.

[64] "A seizure must be 'justified at its inception.' *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (quoting *Hiibel v. Sixth Jud. Dist. Ct.,* 542 U.S. 177, 185 (2004)). To justify reasonable suspicion for a brief detention, an officer, rather than relying on hunches, "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

[65] A court "looks at 'the totality of the circumstances' in determining whether an officer had a particularized and objective basis for suspecting criminal activity." *United States v. Reyes*, 963 F.3d 482, 488 (5th Cir. 2020). "That analysis 'is necessarily fact specific.' *Id*. (quoting *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999)); *Staten v. City of*

**PLAINTIFF'S 1ST AMENDED COMPLAINT** **37**

the present case, the criminal court has terminated all cases for lack of evidence to justify reasonable suspicion and probable cause.[67][68]

142.    Landry framed Mr. Young for resisting arrest when he directed officers to arrest him based on DWI suspicion.[69]

143.    Defendant Landry, in coordination with Does, fabricated evidence that Mr. Young smelled of alcohol and was *'driving on the wrong side of the road multiple times, while honking his horn continually.'*[70]

144.    Together, all Defendant officers knew, acted, or assisted in completing falsified probable cause applications, affidavits, and investigatory reports.[71]

145.    The DCDAO determined that Landry's initial stop was unlawful because they did not find evidence to support his false claims about Mr. Young's driving behavior.[72]

146.    Public Defender, Curtis Hargis, confirmed that Landry's statements were false after he reviewed omitted evidence.

---

*Dallas*, No. 3:19-CV-843-L-BN, 2021 WL 3556671, at *9 (N.D. Tex. July 21, 2021), report and recommendation adopted, No. 3:19-CV-843-L-BN, 2021 WL 3550586 (N.D. Tex. Aug. 11, 2021).

[66] *Id*.

[67] *See* Exhibits 1-13.

[68] DCDAO's determination is dispositive.

[69] "The Supreme Court defines probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *Staten*, No. 3:19-CV-843-L-BN, 2021 WL 3556671, at *9 (N.D. Tex. July 21, 2021), report and recommendation adopted, No. 3:19-CV-843-L-BN, 2021 WL 3550586 (N.D. Tex. Aug. 11, 2021).

[70] More importantly, the facts must be known to the officer at the time of the seizure and "must be particularized to the arrestee." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citations omitted) *Staten*, No. 3:19-CV-843-L-BN, 2021 WL 3556671, at *9 (N.D. Tex. July 21, 2021), report and recommendation adopted, No. 3:19-CV-843-L-BN, 2021 WL 3550586 (N.D. Tex. Aug. 11, 2021).

[71] "Probable cause exists when an officer is aware of 'reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe' that a crime has been or will be committed.' *Davis v. Young*, No. 3:22-CV-439-TSL-RPM, 2024 WL 1975468, at *5 (S.D. Miss. May 3, 2024).

[72] *See Id*.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**                                          **38**

147. Finally, Mr. Young has proven that all Defendant officers relied on Landry's material falsification and omissions in order to taze, arrest, and extract his DNA.[73]

148. Even though he is not required to, Mr. Young has also proven that all cases terminated in his favor.[74] Today, he desperately seeks redress to expedite the expungement process to clear his record.[75]

149. To recover damages for unconstitutional prosecution, conviction, or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a successful § 1983 Plaintiff proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determination, or called into question by federal court's issuance of writ of habeas corpus.[76]

## V. In cases of Intentionally Falsified Warrant Applications and Sworn Statements, Qualified Immunity Does Not Apply.

150. According to the Fifth Circuit, an officer who acts in bad faith is liable for their constitutional violations.[77] In this case, Defendant officers willfully relied on Landry's false

---

[73] *See* Exhibits 1-16.

[74] The Supreme Court holds that a § 1983 Plaintiff demonstrates a favorable termination of criminal prosecution, for the purposes of constitutional violation, when he shows that his prosecution ended without a conviction, and he is not required to demonstrate that evidence was insufficient. *Thompson v. Clark*, 596 U.S. 36, 142 S. Ct. 1332, (2022).

[75] Accordingly, a Plaintiff need only show that his prosecution ended without a conviction and is not required to demonstrate that the prosecution ended with some affirmative indication of his innocence, such as an acquittal or a dismissal accompanied by a statement from the judge that the evidence was insufficient. *Thompson*, 596 U.S. 36, 142 S. Ct. 1332, (2022).

[76] *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, (1994).

[77] A police officer acting in bad faith is not entitled to qualified immunity when the Plaintiff: (1) alleges facts that make out violation of constitutional right, and (2) shows that right at issue was clearly established at time of their alleged misconduct. *Espinal v. City of Houston*, 96 F.4th 741 (5th Cir. 2024).

statements, then used those same statements as the basis to support Mr. Young's detention, arrest, and DNA extraction.[78]

151.    The Fourth Amendment right to be free from arrest without probable cause is clearly established. Thus, Franks liability addresses the distinct issue of false information in a warrant application. [79]

152.    It is well established that the constitution protects against unreasonable/unlawful government intrusion.[80] It also protects a person's right to privacy, and to be free from prosecution without due process of the law.[81]

153.    Therefore, the criminal court has already determined that the arrest decision, probable cause warrant, and related DWI applications submitted by Defendants are VOID because they were based on material falsification.[82]

154.    Even so, the doctrine of qualified immunity does not always require the plaintiff to cite binding case law involving identical facts. An official who commits a patently "obvious" violation of the Constitution is not entitled to qualified immunity.[83]

---

[78] The doctrine of qualified immunity protects public officials from liability for civil damages [so long] 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, (2009)); *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023).

[79] *Guerra v. Castillo*, 82 F.4th 278, 286 (5th Cir. 2023).

[80] A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Melton v. Phillips, 875 F.3d 256, 265 (5th Cir. 2017); Guerra, 82 F.4th 278, 285 (5th Cir. 2023). However, the dispositive question is whether the violative nature of the particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Guerra*, at 285. Accordingly, the Fourth Amendment right to be free from detention/arrest/seizure without reasonable suspicion/probable cause is clearly established. *Guerra*, at 286.

[81] When a Plaintiff establishes, by a preponderance of evidence, that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by [the] affiant in a warrant affidavit, and, with affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and fruits of search excluded to the same extent as if probable cause was lacking on the face of the affidavit. U.S.C.A.Const. Amends. 4, 14; *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978).

[82] A [probable cause] affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. *Franks*, 438 U.S. 154, 98 S. Ct. 2674, (1978).

155.     In this case, intentional lies to support reasonable suspicion for a traffic stop, then using the same falsities to support probable cause for an arrest are similarly egregious.[84]

156.     Defendants purposefully lied to the magistrate judge to secure a warrant, which was the basis of their probable cause determination.[85] Defendant officers intended to defraud the magistrate, Irving municipal court, and DCDAO by mixing multiple false statements with purposefully misleading statements about what Landry observed before initiating a traffic stop.[86]

157.     Moreover, Mr. Young has provided overwhelming evidence that the affidavits were perjured.[87] Subsequently, he has also proven that Defendants' willful misconduct was the driving force behind Mr. Young's deprivation.[88] Defendant Does assisted, supported, and corroborated Landry and Hammett's wicked scheme by tazing, arresting, and transporting Mr. Young based on the same material falsifications used to defraud the magistrate judge.[89]

---

[83] *Villarreal v. City of Laredo*, Tex., 17 F.4th 532, 540 (5th Cir. 2021).
[84] Exhibits 1-16

[85] Furthermore, an affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause for issuance of [a] search warrant. Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317 (1983). Sufficient information must be presented to the magistrate to allow [the] official to determine probable cause for issuance of a warrant; his action cannot be a mere ratification of the bare conclusions of others. Id.; *See* Exbibits 1-13.
[86] Under the 'taint' exception to the independent intermediary doctrine, an arresting officer is liable for an unreasonable detention/search/seizure/false arrest when the magistrate's decision to issue a warrant is tainted by material falsifications. *Espinal v. City of Houston*, 96 F.4th 741, 746 (5th Cir. 2024).

[87] In order to [e]nsure that an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued. *Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). Similarly, the good-faith exception does not apply when the material presented to the magistrate or judge is false or misleading. 438 U.S. 154, 98 S.Ct. 2674.

[88] The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued. Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983. *Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003).

[89] An officer is liable under § 1983 for providing false information in an arrest warrant application when the officer assisted in the preparation of, or otherwise presented or signed, the warrant application; if an officer does not present or sign the affidavit, liability attaches even if he helped prepare the complaint by providing information for use in it. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983. *Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023).

**PLAINTIFF'S 1ST AMENDED COMPLAINT**                                    **41**

158.     For instance, in *Morgan*, the Fifth Circuit held that a government employee was not entitled to qualified immunity when she fabricated a report about a physician's conduct and thus, [the] investigator was not entitled to [qualified] immunity in [the] physician's § 1983 action against [the] investigator based on such report, where [the] report was the sole piece of evidence that established probable cause for [the] physician's indictment on criminal charges.[90]

### VI.     Prosecution/Charges Based on Materially False Evidence are Void Under the Constitution.

159.     Under *Terry*, the legality of the stop is a dual inquiry: (1) "whether the officer's action was justified at its inception," and (2) whether the officer's subsequent actions were "reasonably related in scope to the circumstances that justified the interference in the first place."[91]

160.     In this case, the criminal court determined that the initial stop was not justified because Landry and Hammet, in collaboration with Defendant officers, clearly lied when they swore in the probable cause application that Landry detained Mr. Young for *'driving on the wrong side multiple times, while sounding his horn continually.'*[92] Therefore, it is impossible for any kind of reasonable mistake to exist when officers purposefully create false evidence.[93]

161.     Furthermore, Defendant officers also willingly relied on Landry's false statements to support their actions in detaining, arresting, seizing, tazing, and extracting Mr. Young's DNA.

---

[90] *Morgan v. Chapman*, 969 F.3d 238, 245–46 (5th Cir. 2020).
[91] *Terry v Ohio*, 392 U.S. at 19-20.
[92] *See* Exhibits 1-13, proving that Landry lied about observing such behavior.
[93] "Police officers who 'reasonably but mistakenly conclude that probable cause is present' are entitled to qualified immunity." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).

162.     When Mr. Young insisted on knowing justification for initiating the stop, Landry, in coordination with Defendant officers, retaliated against him for asserting his constitutional rights. Thus, there was no reason for Mr. Young to be under suspicion of criminality because Landry lied about his observations.[94]

163.     Instead, when Mr. Young tried to understand Landry's illegal requests, he was framed for being resistant and refusing to cooperate; however, there is no legal requirement to obey an unlawful command based on intentionally false suspicions.[95]

164.     Accordingly, a command given based on intentionally, purposefully, and knowingly false information is unenforceable.[96] The constitution prevents an officer from erroneously engaging citizens for investigatory purposes; it definitely forbids unlawful purposes[97] Thus, the DCDAO determined that it is unconstitutional for Defendants' lies to be the basis for supporting prosecution against Mr. Young.[98]

---

[94] It is well settled law that an officer who initiates a traffic stop can lawfully order an individual out of his vehicle for the safety of the officers only if reasonable suspicion exists. *Garcia v. Bermea*, No. DR-21-CV-004-AM-CW, 2023 WL 7361372, at *9 (W.D. Tex. Aug. 18, 2023), report and recommendation adopted, No. DR-21-CV-004-AM/CW, 2023 WL 6394398 (W.D. Tex. Oct. 2, 2023), aff'd, No. 23-50871, 2024 WL 3326088 (5th Cir. July 8, 2024).

[95] Under Texas law, if a person "willfully fails or refuses to comply with a lawful order or direction of a police officer," that person has committed an offense of section 542.501 of the Texas Transportation Code, which is an arrestable offense. *Garcia v. Bermea*, No. DR-21-CV-004-AM-CW, 2023 WL 7361372, at *9 (W.D. Tex. Aug. 18, 2023), report and recommendation adopted, No. DR-21-CV-004-AM/CW, 2023 WL 6394398 (W.D. Tex. Oct. 2, 2023), aff'd, No. 23-50871, 2024 WL 3326088 (5th Cir. July 8, 2024).

[96] In making reasonable-suspicion determinations, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing" at the time of the seizure. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417–18 (1981)).

[97] Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant. *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017).

[98] "Reasonable suspicion 'is dependent upon both the content of the information possessed by police and its degree of reliability.' *Garcia v. Bermea*, No. DR-21-CV-004-AM-CW, 2023 WL 7361372, at *10; "Probable cause exists when officer is aware of 'reasonably

165. Furthermore, whether Mr. Landry's actions were reasonable is based on a review of all relevant evidence, which is considered under the specific circumstances, and should be determined by a jury.[99]

166. However, the analysis is inconsequential because Mr. Young has proven that his detention, arrest, and DNA extraction were based on false information.[100] Therefore, the criminal court already determined that the charges could not be sustained because they were based on intentionally fabricated evidence.

## VII.     Tazing a Non-Violent Citizen to Enforce an Unlawful Arrest is Excessive.

167. Mr. Young was surrounded by officers who were directed to arrest him based on Landry's false representations. Therefore, like any reasonable person, Mr. Young was afraid and confused as to why he was under arrest when the mob of officers attacked him. It is reasonable for a person to beg and scream not to be attacked.

168. However, it is unreasonable to rely on false information in efforts to frame a citizen for DWI and subsequent non-compliance.

169. Mr. Young suffered from the excessive force of being wrongfully framed as non-compliant/argumentative when he refused to agree to Landry's false observations. He was tazed

---

trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe' that a crime has been or will be committed. *'Davis v. Young*, No. 3:22-CV-439-TSL-RPM, 2024 WL 1975468, at *5 (S.D. Miss. May 3, 2024).

[99] "Any analysis of reasonable suspicion is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *Id*. (Landry fabricated his observations to implicate DWI suspicion; Exhibits 1-13).
[100] *See* Exhibits 1-14.

multiple times and wrestled down to the ground because Landry lied about his observations and interactions.[101]

170.    Therefore, a jury would determine whether it was reasonable to taze, attack, and arrest a citizen for refusing to agree with false accusations.[102] Before this event, Mr. Young had never been tazed. In addition to physical injury, he now suffers chronic mental illness, which is treated with psychiatric medication.

171.    Mr. Young was non-violent, non-threatening, and did NOT attempt to flee the scene at any time. Mr. Young paced back-and-forth as he contacted 9-11 for assistance because he refused to agree to Landry's lies about his observations of Mr. Young's driving behavior.[103] Under these circumstances, the constitution protects citizens from unreasonable government intrusion.

172.    For example, Under Texas law, police officers who lacked actual or arguable probable cause to arrest anti-abortion protesters while protesting outside abortion clinic for failure to identify, in violation of Texas law, and thus, officers were not entitled to qualified immunity, in protester's § 1983 unlawful arrest claim because protester had not yet been arrested when he allegedly failed to provide officers with identification, and the "failure to identify"

---

[101]To establish a claim of excessive force under the Fourth Amendment, a plaintiff demonstrates: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Trammell v. Fruge*, 868 F.3d 332, 339–40 (5th Cir. 2017).

[102] Determining whether the force used was "reasonable" requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L. Ed. 2d 1865 (1989).

[103] The Fourth Amendment is violated where officers lack reasonable suspicion to believe that a defendant was engaged or had engaged in criminal conduct.  *Brown v. Texas*, U.S.Tex.1979, 99 S.Ct. 2637, 443 U.S. 47, 61 L.Ed.2d 357.

offense was triggered only when a person who has already been arrested failed to provide identification upon an officer's request.[104]

173. In this case, DCDAO terminated all charges because the Fourth Amendment protects against unreasonable government intrusion. Thus, Mr. Young was not required to give up his freedoms because Landry violated Mr. Young's constitutional rights when he lied about his reasons for suspecting Mr. Young of intoxication, which he swore was the reason he initiated the traffic stop.[105] Then, at Landry's direction, Hammet/Does knowingly relied on the same material falsifications to frame Mr. Young.

174. Specifically, Landry conspired with Hammett and Defendant officers by lying in the probable cause warrant/affidavit/investigation reports to effectively defraud the magistrate judge into erroneously approving Mr. Young's detention, arrest, and DNA extraction.[106]

175. Based on the aforementioned circumstances, DCDAO terminated all criminal prosecution because it is well-known that penalizing a citizen for lawfully challenging a police officer's conduct is unreasonable. Moreover, prosecution based on falsified evidence and material omissions violates First, Fourth, and Fourteenth protections.

G. **Defendants' Framing Mr. Young Caused Chronic and Irreparable Harm.**

176. Although the case against Mr. Young was dismissed, this is not an example of the criminal system "working."

---

[104] *Davidson v. City of Stafford*, Texas, C.A.5 (Tex.)2017, 848 F.3d 384, rehearing en banc denied, revised.
[105] Exhibits 1-16.
[106] Exhibits 1-16.

177. To the contrary, this case underscores the irreversible harm police can inflict when they abuse the unparalleled trust and power with which the system endows them.

178. Dismissal of Mr. Young's criminal case, which was filed only because several police officers agreed to lie, did not undo the harm that those officers caused.

179. Dismissal did not reverse the humiliation and fear that Defendants inflicted upon Mr. Young by arresting him based on false statements and material omissions.

180. Dismissal did not return the multiple vials of his blood that were forcibly extracted and examined by a government agent through the fraudulently obtained, coercive power of the court.

181. Dismissal did not wash away the trauma of three nights in jail–where Mr. Young was left to sleep on a cold, concrete slab with nothing but toilet paper for a pillow, in a cell full of strangers, with a single, door-less public toilet, surrounded by people who were in the midst of crises of their own–rather than safe in his own bed, in his own home so he could perform well at work and school full-time.

182. Dismissal did not return the countless number of hours Mr. Young spent defending himself from 2021-2023, causing him to miss exams, class, and work to attend copious pre-trial proceedings over the course of 24 months.

183. Dismissal did not reimburse him for the catastrophic economic loss he continues to suffer due to the fact that he now, and forever, has an underserved criminal record.

**PLAINTIFF'S 1ST AMENDED COMPLAINT** 47

184. Dismissal did not reverse the destabilizing fear and anxiety he suffered while his felony case was pending, knowing that he was facing up to a decade in prison and that, at any moment, if the Judge decided he had violated any one of the many onerous conditions of release that had been imposed, he could be returned to the jail and lose access to his education, career, and freedom.

185. Dismissal did not enable him to recoup the school/workdays interrupted, and days spent dealing with court obligations.

186. Dismissal did not eliminate the shame and everyday implications of having his name tied to a felony charge on every background check.

187. Dismissal cannot eliminate the mandatory disclosure requirements he must submit to all present and future employers and regulatory agencies associated with the financial services industry.

188. Dismissal cannot eliminate the fact that Mr. Young is virtually and digitally known as a criminal deviant according to various governmental agencies, like the DCDAO, Texas Highway Patrol, and the like.

189. Dismissal cannot alleviate the chronic anxiety he now feels whenever he drives a car, or the debilitating dread that fills his stomach whenever he notices a police cruiser in his rearview mirror.

190. Dismissal cannot alleviate the debilitating trauma he has from being violently tazed for the first and only time in his life as a 32yr old Black man.

191.     Dismissal did not remedy the disillusionment, pain, and sense of betrayal that comes from having one's rights violated by those who purportedly exist to protect them.

192.     And dismissal cannot remedy the chronic mental illness Mr. Young will continue to suffer, as a result of this life-altering infraction. Nor can it compensate for a lifestyle dependent upon copious amounts of psychiatric medication that can cause suicide or addiction.

193.     By their actions, Defendants caused Mr. Young emotional distress, fear, embarrassment, humiliation, reputational damage, inconvenience, loss of income, and physical pain.

## VIII.  The Cty of Irving Failed to Intervene, Train, Respond, & Failed to Manage its Organizational Policies, Which Caused Mr. Young Constitutional Deprivation.

*a) The City of Irving violated Mr. Young's rights when it executed charges and approved an arrest based on intentionally false evidence.*

194.     Mr. Young filed a timely complaint with Irving PD's Internal Affairs department for help with clearing his name and restoring his reputation, but they affirmed Defendant officers' bad actions instead.[107]

195.     Even though DCDAO determined that no evidence of reasonable suspicion OR probable cause existed, Irving Internal Affairs protected its corporate interest by failing to disclose material exculpatory evidence. For instance, these kind of elusive business practices are developed/enforced/ratified by the City of Irving, Inc. in order to avoid corporate liability.[108]

---

[107] Municipalities and other local government units are included among those "persons" to whom the Civil Rights Act of 1871 applies; overruling Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. 42 U.S.C.A. § 1983. *Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

[108] Irving City Charter, *supra*, at 12.

196.     The City of Irving, TX has a council-manager system of government. The mayor and city manager act as Chief Executive Officers, overseeing designated functions.

197.     The City of Irving, made a body politic and corporate by the legal adoption of this Charter, shall have perpetual succession, may use common seal; may sue and be sued.[109]

198.     The City of Irving has the power, by ordinance, to <u>establish and maintain</u> a police department and to prescribe the duties of the members of said department and <u>regulate their conduct</u> and their salaries.

199.     The head of the police department of said city shall be known and designated as "Chief of Police," and the other sworn members thereof shall be known as "Police Officers." Said officer or officers shall have power to arrest."[110]

200.     The city-council shall have all powers necessary and incident to the proper discharge of the duties imposed upon it and is hereby invested with all powers necessary to carry out the terms of this Charter; it being intended that the city council and mayor shall have and exercise all powers enumerated in this Charter or implied thereby and all powers that are or hereafter may be granted to municipalities by the Constitution or laws of the State of Texas.[111]

201.     The city-manager shall also be the chief executive and shall see that the laws and ordinances of the city are enforced. The city-manager shall appoint all appointive officers, or

---

[109] Irving City Charter, *supra*, at 7.
[110] Irving City Charter, *supra*, at 12.
[111] *Id*. at 17.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**                                     **50**

employees of the city (such appointments to be made upon merit and fitness alone), and may at will remove any officers or employees appointed by the city manager."[112]

202. Plainly, like many cities in Dallas County, the City of Irving is/functions like a corporation. Specifically, the mayor acts as the Chief Executive Officer, the City-Council functions as the Borad of Trustees/Directors, and the City-Manager is the Chief Administrator who advises the council on legislative and policy related matters.[113]

203. Therefore, subordinate organizations are inherently linked to the principal organization through its decision-making and administrative processes. Accordingly, the governing body has direct involvement in principle organizational functions. Explicitly, the City of Irving maintains full control of its subordinate organizations, like the IPD/Internal Affairs, etc.

204. In this case, Irving Police Department and Irving Internal Affairs act, in conjunction, to execute the City of Irving's organizational directives. Factually, the City of Irving, thru its officers, acts as the principal organization and final policy/decision-maker.

205. Specifically, Defendant City creates/reviews/ratifies/controls/enforces key administrative business functions/policies, like the council-manager system of government, warrant applications, DWI policies, and the complaints management processes.[114]

206. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be

---

[112] *Id*. at 27.
[113] Cty of Dallas, Overview of City Organization, *supra*, at 1-2.
[114] Irving City Charter, *supra*, at 12.

**PLAINTIFF'S 1ST AMENDED COMPLAINT** <span>51</span>

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.[115]

207. The City of Irving is the final actor and decision-maker of all policies, ordinances, regulations, and decisions for its subsidiary organizations.[116] Therefore, a decision related to warrants/complaints management/DWI policies are officially adopted and promulgated by the City of Irving's Officers because they retain control of administrative processes.[117]

208. Thus, the City of Irving, via its officers, was directly involved in Mr. Young's constitutional deprivation by knowingly, willingly, purposefully, initiating prosecution based on false information.[118] Defendant City admits to having actual and constructive knowledge of all organizational functions because it says so in the city charter.

209. Furthermore, Mr. Young put Defendant City on notice of their involvement in his deprivation when he filed a complaint and met with the magistrate judge after repeatedly contacting the municipal courts about the incident.[119] Defendant City acts/executes/manages/supervises/directs the agents who perform its business functions.

210. When the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.[120]

---

[115] *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035–36, 56 L. Ed. 2d 611 (1978).
[116] Irving City Charter, *supra*, at 1-12.
[117] *See, Id*.
[118] Mr. Young submitted a formal complaint and repeatedly contacted the Irving magistrate.
[119] The magistrate judge and gov. investigator told Mr. Young to "Do what ever the police tell you."
[120] *Monell*, at 694.

211. The City of Irving, through its officers, executed an arrest warrant/DNA extraction that was based on materially false and purposefully misleading statements in the probable cause application.[121]

212. It is well-known that there is a presumption that police officers are expected to be reliable sources of information, and affidavits in support of a warrant must be executed without deliberate indifference to constitutional violations.[122]

213. The "official policy" requirement is intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered.[123]

214. With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.[124] Thus, no one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy.[125]

---

[121] Exhibits 1-16.
[122] *Franks v. Delaware*, 438 U.S. 154 (1978).

[123] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986).
[124] *Id.* at 480.

[125] *Id.*

215. If the decision to adopt [a] particular course of action is properly made by [a] government's authorized decisionmakers, it certainly represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.[126]

216. A § 1983 plaintiff sufficiently alleges that: (1) defendants acted under the color of state law; (2) and he was deprived of his rights, privileges, or immunities secured by the Constitution or laws of the United States as a result of the action(s).[127]

217. In this case, Mr. Young has successfully proven that Defendant Sgt. Landry initiated a traffic stop without reasonable suspicion because he lied about his observations of Mr. Young's driving behavior.

218. Mr. Young has also proven that the probable cause warrant application and related DWI affidavits were approved based on Defendant officers' intentional misconduct to defraud the magistrate judge when they relied on Landry's material falsifications to execute an arrest and DNA extraction.[128]

    b) *The City of Irving's Permissive Customs & Policies Did Not Protect Mr. Young's Constitutional Rights*

---

[126] *Id.* at 481.
[127] *Torres v. Allentown Police Dep't*, No. CIV.A. 13-3066, 2014 WL 4081477, at *4 (E.D. Pa. Aug. 18, 2014).
[128] Exhibits 1-16.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**      **54**

219.    A municipality fails to preserve individual constitutional rights when it: (1) has policies that (2) amount to a 'deliberate indifference' concerning a plaintiff's constitutional rights, and (3) its policies are the moving force behind the constitutional violation.[129]

220.    In cases like Young's, the City of Irving perpetually fails to intervene by intentionally establishing/maintaining a form of government that was historically designed to evade institutional liability.

221.    By maintaining this form of government, The City of Irving shield's itself and it agents from accountability when the agents of its subordinate organizations cause constitutional injury during the course of performing the City's organizational functions.

222.    *Piotrowski* states that "[a] pattern [of failure to discipline] can evidence not only the existence of a policy but also deliberate indifference."[130] For instance, from 2016-2021, the City of Irving's police accountability rates decreased, even though they were already exceptionally low, from 46% to 38%.[131] In 2021, only 20% of all complaints against officers were sustained.[132] Nationally, 85% of exonerations are enacted due to official misconduct.[133]

223.    Prior to its institution in 1871, Southern judicial systems were plagued with discrimination and malfeasance.[134] In fact, § 1983 was purposely instituted to protect citizens

---

[129] *Torres v. Allentown Police Dep't, No. CIV.A. 13-3066*, 2014 WL 4081477, at *4 (E.D. Pa. Aug. 18, 2014).

[130] *Piotrowski*, 237 F.3d at 582.

[131] https://policescorecard.org/tx/police-department/irving
As the *Sanchez* court observed, "it is indeed surprising that the officers involved in the various incidents [Barnes] describe[s] were not subject to any notable discipline.... This alleged lack of disciplinary measures plausibly suggests to the Court that EPPD had a blanket policy of not disciplining officers who were responsible for using excessive force. *"Barnes v. City of El Paso*, 677 F. Supp. 3d 594, 612–13 (W.D. Tex. 2023).

[132] https://policescorecard.org/tx/police-department/irving

[133] National Registry of Exonerations, *supra*, at 3.

[134] *Nancy Williams, et al., Petitioners, v. Fitzerald Washington*, Alabama Secretary of Labor, Respondent., 2024 WL 1761176.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**                    **55**

against this specific kind of constitutional deprivation enacted by local governments through its policies, customs, and practices.[135]

224. In this case, the City's charter practically guarantees that it will not be held accountable for the misconduct of its agents, while retaining full power and control over its internal investigation processes to vindicate subordinates who commit constitutional injury.

225. "[W]hen a police officer knows their DWI arrests 'will meet with the approval of city policymakers, the affirmative link/moving force requirement is satisfied.' "[136]

226. Therefore, Defendant City, through its elected officers, has a personal interest in ensuring that its subordinate agents and organizations are not accountable for their constitutional deprivations.

227. Most importantly, the City of Irving ensures that their agents are protected from liability because it maintains full control of its agents, their decisions, and its policies.[137]

228. Specifically, The City of Irving's form of government, as described in the city charter, is the 'official policy' that demonstrates a 'deliberate indifference' to individual rights by effectively shielding itself and its subordinates from liability when they cause constitutional injury.

---

[135] Section 1983 was enacted because many states were not adequately protecting individual rights and were enforcing their own laws selectively and discriminatorily. *Nancy Williams, et al., Petitioners, v. Fitzerald Washington*, Alabama Secretary of Labor, Respondent., 2024 WL 1761176.

[136] As the *Sanchez* court observed, "it is indeed surprising that the officers involved in the various incidents [Barnes] describe[s] were not subject to any notable discipline.... This alleged lack of disciplinary measures plausibly suggests to the Court that EPPD had a blanket policy of not disciplining officers who were responsible for using excessive force. *Grandstaff v. City of Borger*, 767 F.2d 161, 170 (5th Cir. 1985); *Barnes v. City of El Paso*, 677 F. Supp. 3d 594, 612–13 (W.D. Tex. 2023).

[137] Irving City Charter, *supra*, 7-12.

229. As such, the council-manager form of government is the driving force behind the custom of submitting falsified affidavits and warrant applications within the City of Irving's subordinate agencies, like IPD and Internal Affairs.

230. In this case, the City of Irving's charter, along with state law, protects it from liability. The City of Irving also protected Defendant officers from liability when it (1) relied on the false evidence to initiate prosecution against Mr. Young and (2) ratified Defendants' misconduct by affirming their actions via their Internal Affairs Investigation process.

231. Thus, the City of Irving knowingly, intentionally, and purposely acted with deliberate indifference in violation of Mr. Young's constitutional rights by intentionally evading liability and protecting its agents who commit misconduct, through its organizational structure.

232. Defendant City also ratified Defendant officers' misconduct when it acted as the final decision-maker with policy-maker power to (1) initiate criminal charges, (2) approve warrants, and (3) reject Mr. Young's complaint, while acting as the supervising organization for IPD and Irving Internal Affairs business processes.

233. A municipality is responsible for 'deliberate indifference' when their customs cause constitutional injury.[138] For instance, when a policymaker is aware of particular unlawful conduct, but fails to take precautions against future violations, the municipality is responsible for the plaintiff's constitutional deprivation.[139]

234. In this case, the City of Irving acted with deliberate indifference by failing to respond appropriately to Mr. Young's complaint, even though Mr. Young gave them evidence

---

[138] *Id.*
[139] *See Id.*

**PLAINTIFF'S 1ST AMENDED COMPLAINT** **57**

that the DCDAO could not support the sworn statements in the probable cause application and related DWI documentation submitted by Defendant officers.

235.     Furthermore, the City's charter is the official policy that permits the wide-spread custom of falsified probable cause applications, investigation reports, and DNA extractions. For instance, subordinate agents are incentivized to submit false reports because historical data shows that the City practically ensures that they will be shielded from liability, even if an internal investigation is performed. Not to mention that the state constitution permits government agencies to violate individual rights.

236.     Thus, § 1983 is the only appropriate vehicle to remedy the constitutional violations Defendant City and its agents jointly and severally caused against Mr. Young.

## H. CLAIMS FOR RELIEF

## COUNT I | 42 U.S.C. § 1983 | AGAINST ALL DEFENDANT OFFICERS | FOR DELIBERATELY FABRICATING EVIDENCE TO FRAME MR. YOUNG IN VIOLATION OF THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE

237.     Plaintiff re-alleges Paragraphs 1-236 of the Complaint and incorporates by reference the allegations set forth herein:

238.     According to the Fifth Circuit,

> Deliberate framing of a person by the state offends the most strongly held values of our nation. We echo again the apt words of the First Circuit that, "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals." As the Third Circuit has stated, "no sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence." . . . . The rule of law, which we have

cherished since our founding, cannot abide such conduct. *Cole v. Carson*, 802 F.3d 752, 772 (5th Cir. 2015), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016), and *opinion reinstated in relevant part,* 905 F.3d 334 (5th Cir. 2018).

239. Here, Defendant Sgt. Landry lied about Mr. Young's driving behavior so he could initiate an unauthorized traffic stop.

240. Then, Defendant Hamett and Does, in coordination with Landry, wrote and submitted sworn affidavits containing statements they knew were false, and omitted exculpatory evidence they knew to be true.

241. They did so to mislead the magistrate Judge into authorizing a warrant to extract and examine Mr. Young's blood, which they did.

242. Defendants Hammet and Does, in collaboration with Landry, provided statements containing the same falsehoods and omissions, to the screening prosecutor. They did so to mislead the judge, the city of Irving, and Dallas County criminal courts into accepting the case and initiating pre-trail prosecution, which they did.

243. Defendant Hammet, in coordination with Landry and Does, submitted the same sworn statements through the District Attorney Intake Management System to a magistrate. They did so to mislead the magistrate into finding probable cause for the DWI, Resisting Arrest, & Failure to ID charges, which continue to impose numerous intrusive, burdensome, and expensive restrictions on Mr. Young's health and overall well-being.

244. Furthermore, Defendants fabricated multiple false police reports, containing the same falsehoods, to conceal their misconduct, corroborate their other fabricated evidence, and further retaliate against Mr. Young.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**

245.     In short, Defendants intentionally fabricated, caused to be fabricated, and agreed to fabricate, evidence that Mr. Young "drove on the wrong side of the road multiple times, while sounding his horn continuously" and "smelled of strong alcohol odor."[140]

246.     In doing so, they deprived Mr. Young of his liberty and property without due process of the law and violated Mr. Young's clearly established rights, including the right to not be framed by law enforcement.

247.     Defendants' deliberate fabrication of evidence that they submitted to at least one judge, one prosecutor, and one magistrate, for purposes of concealing Defendants' mistreatment of, and further retaliating against, Mr. Young, is so offensive to basic concepts of liberty, justice and democracy that it "shocks the conscience" and violates Mr. Young's clearly established First, Fourth, & Fourteenth Amendment substantive and procedural due process rights.[141]

248.     Defendants, acting under the color of state law, directly and proximately caused the violations of that clearly established right and ensuing compensable injuries. Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to

---

[140] State law does not provide a meaningful avenue for Mr. Young to obtain an adequate remedy. Instead, it creates a Catch-22 that effectively bars intentional tort claims against police officers. The Texas Tort Claims Act ("TTCA") immunizes police officers for intentional torts committed within the scope of their employment. *See Tipps v. McCraw*, 945 F. Supp. 2d 761, 768 (W.D. Tex. 2013) (TTCA "foreclose[s] suit against a government employee in his *individual* capacity if he was acting within the scope of employment. . . .") (emphasis in original). However, Texas has not waived sovereign immunity as to intentional torts, so he cannot sue the City, either. *See Franka v. Velasquez*, 332 S.W.3d 367, 378 (Tex. 2011) (TTCA "expressly excluded intentional torts from the scope of the Act's [sovereign] immunity waiver.").

[141] Some courts have referred to a due process violation based upon fabricated evidence leading to a deprivation of liberty as a "fabrication-of-evidence" or "fair trial" claim. *See, e.g.*, *Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020) (noting the court's reinstatement of "three fabrication-of-evidence claims."); *Frost v. New York City Police Dep't*, 980 F.3d 231, 249-50 (2d Cir. 2020) ("Notwithstanding the nomenclature, a criminal defendant's right to a fair trial protects more than the fairness of the trial itself. Indeed, a criminal defendant can bring a fair trial claim even when no trial occurs at all. . . .. [T]he (perhaps imprecisely named) fair trial right protects against deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury*.") (internal quotations and citations omitted).

Mr. Young's rights and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

**COUNT II | 42 U.S.C. § 1983 | AGAINST ALL DEFENDANTS | FOR RELIANCE ON FALSE STATEMENTS AND MATERIAL OMISSIONS IN AN APPLICATION FOR A WARRANT TO FORCIBLY EXTRACT AND EXAMINE MR. YOUNG'S BLOOD IN VIOLATION OF THE FOURTH AMENDMENT**

249. Mr. Young re-alleges and incorporates by reference the allegations set forth in paragraphs 1-248 above as if fully set forth herein.

250. Defendants Hammet/Landry's submissions to a City of Irving judge, of the sworn application for a warrant to forcibly extract and examine Mr. Young's blood, at Defendant Landry's request, and in coordination with Defendant Does, violated Young's clearly established Fourth Amendment rights.

251. The warrant for Mr. Young's forcible blood extraction and examination would not have been issued, and Mr. Young's blood would not have been forcibly extracted and examined by a government agent, but for Defendants' false statements and material omissions, which were terminated by the criminal District Attorney.

252. Defendants included, caused to be included and agreed to include these false statements and material omissions in their warrant application knowingly and intentionally, or with reckless disregard for the truth.

253. On information and belief, all three Defendants assisted in the preparation of the false affidavit by agreeing upon falsehoods to include and exculpatory facts to omit. They did so either while huddling on-scene with their microphones turned off or shortly afterwards, but

before producing the false statements appearing to conceal and justify Defendant Landry's directive to arrest Mr. Young based on false statements.

254. Defendants' unconstitutional acts, under color of state law, directly and proximately caused compensable injury to Mr. Young.

255. Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Young's rights and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

**COUNT III | 42 U.S.C. § 1983 | AGAINST ALL DEFENDANTS | FOR RELIANCE ON FALSE STATEMENTS AND MATERIAL OMISSIONS IN A PROBABLE CAUSE AFFIDAVIT TO ERRONEOUSLY ARREST MR. YOUNG**

256. Mr. Young re-alleges and incorporates by reference the allegations set forth in paragraphs 1-255 above as if fully set forth herein.

257. Defendants' reliance on false statements and material omissions in an affidavit, submitted to a magistrate for review of whether probable cause existed for a felony prosecution and its associated searches and seizures, violated Mr. Young's clearly established Fourth Amendment rights.

258. But for Defendants' false statements and material omissions, the magistrate would not have found probable cause for prosecution to proceed. Nor would a criminal prosecutor expect Mr. Young to submit to the numerous searches and seizures arising from the pending felony case, including three daily breath tests, random drug testing, required appearances at court and pretrial services, and other searches and seizures.

259. Defendants' unconstitutional acts, under color of state law, directly and proximately caused compensable injury to Mr. Young.

260. Defendants included, caused to be included, and agreed to include these false statements and material omissions in the affidavit knowingly and intentionally, or with reckless disregard for the truth.

261. On information and belief, all three Defendants assisted in the preparation of the false affidavit by agreeing upon falsehoods to include and exculpatory facts to omit. They did so either while huddling on-scene with their microphones turned off or shortly afterwards, but before producing the false statements appearing to conceal and justify Defendant Landry's directive to arrest Mr. Young based on false statements.

262. Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Young's rights and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

**COUNT IV | 42 U.S.C. § 1983 | AGAINST ALL DEFENDANT OFFICERS | FOR RETALIATION AGAINST MR. YOUNG FOR QUESTIONING THE LEGITIMACY OF-AND HIS LEGAL OBLIGATION-TO KNOW WHY HE WAS DETAINED FOR A TRAFFIC STOP**

263. Mr. Young re-alleges and incorporates by reference the allegations set forth in paragraphs 1-265 above as if fully set forth herein.

264. The First Amendment prohibits government officials from retaliating against individuals engaged in constitutionally protected activities.

**PLAINTIFF'S 1ST AMENDED COMPLAINT** 63

265. Mr. Young engaged in constitutionally protected speech when he questioned the legitimacy of–and his legal obligation to agree to–Defendant Landry's decision to initiate a traffic stop.

266. As established above, there was no reasonable suspicion to initiate a traffic stop or to suspect Mr. Young of intoxication.

267. Also, as established above, there was no probable cause to arrest Mr. Young for the offense of DWI.

268. Defendants would not have arrested Mr. Young but for his questioning of Defendant Landry's conduct and the legal basis of his requests.

269. By arresting Mr. Young and deliberately fabricating evidence, deliberately causing evidence to be fabricated, and deliberately agreeing to fabricate evidence against him because of his speech, Defendants impermissibly retaliated against him in violation of his clearly established First Amendment rights.

270. Defendants included, caused to be included, and agreed to include these false statements and material omissions in the affidavit knowingly and intentionally, or with reckless disregard for the truth.

271. But for Mr. Young's engagement in constitutionally protected activity, Defendants would not have arrested and fabricated false evidence to incriminate him.

272. Defendants' unconstitutional acts, under color of state law, directly and proximately caused compensable injury to Mr. Young.

273. On information and belief, all Defendants assisted in the preparation of the false affidavit by agreeing upon falsehoods to include and exculpatory facts to omit.

274. They did so either while huddling on-scene with their microphones turned off or shortly afterwards, but before producing the false statements appearing to conceal and justify Defendant Landry's directive to arrest Mr. Young based on false statements.

275. Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Young's rights and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

**COUNT V | 42 U.S.C. § 1983 | AGAINST ALL DEFENDANT OFFICERS | FOR CIVIL CONSPIRACY**

276. Mr. Young re-alleges and incorporates by reference the allegations set forth in paragraphs 1-275 above as if fully set forth herein.

277. Defendants, acting under color of state law, agreed to take actions to deprive Mr. Young of his clearly established constitutional rights as described in Counts I-IV.

278. They agreed, at Defendant Landry's direction, to fabricate evidence against him, in the form of false affidavits, police reports and sworn statements, which contradict their own observations and statements on the scene.

279. They did so in an attempt to conceal and justify Defendant Landry's spontaneous and unjustified detention and arrest of Mr. Young and to further retaliate against Mr. Young for questioning the legitimacy of, and legal basis for, Defendant Landry's conduct.

280. On information and belief, all Defendants assisted in the preparation of the false affidavit by agreeing upon falsehoods to include and exculpatory facts to omit. They did so either while huddling on-scene with their microphones turned off or shortly afterwards, but before producing the false statements appearing to conceal and justify Defendant Landry's directive to arrest Mr. Young based on false statements.

281. Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Young's rights and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

**COUNT VI | 42 U.S.C. § 1983 | AGAINST ALL DEFENDANTS | FOR FAILURE TO INTERVENE**

282. Mr. Young re-alleges and incorporates by reference the allegations set forth in paragraphs 1-281 above as if fully set forth herein.

283. Defendants, acting under color of state law, knew or should have known that they and others were violating Mr. Young's constitutional rights as described in Counts I-V.

284. Defendants each had multiple reasonable opportunities to intervene and prevent these violations but, acting with deliberate indifference, declined to do so.

285. Defendants' failure to intervene and deliberate indifference violated Mr. Young's clearly established constitutional rights.

286. Through their failure to intervene, Defendants directly and proximately caused Mr. Young's injuries.

287.     Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Young's rights and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

**COUNT VII| 42 U.S.C. § 1983 | AGAINST THE CTY OF IRVING | FOR FAILURE TO INTERVENE, SUPERVISE, MANAGE, AND DELIBERATE INDIFFERENCE | MONNELL LIABILITY**

288.     Mr. Young re-alleges and incorporates by reference the allegations set forth in paragraphs 1-287 above as if fully set forth herein.

289.     Defendant City's reliance on false statements and material omissions in an affidavit, submitted to a magistrate for review of whether probable cause existed for a felony prosecution and its associated searches and seizures, violated Mr. Young's clearly established Fourth and Fourteenth Amendment rights.

290.     But for Defendant officers' false statements and material omissions, the magistrate would not have found probable cause for prosecution to proceed. Nor would a criminal prosecutor expect Mr. Young to submit to the numerous searches and seizures arising from the pending felony case, including three daily breath tests, random drug testing, required appearances at court and pretrial services, and other searches and seizures.

291.     Defendants' unconstitutional acts, under color of state law, directly and proximately caused compensable injury to Mr. Young.

292.     Defendant officers included, caused to be included, and agreed to include these false statements and material omissions in the affidavit knowingly and intentionally, or with reckless disregard for the truth.

**PLAINTIFF'S 1ST AMENDED COMPLAINT**                                                    **67**

293. Defendant City failed to intervene when Mr. Young reported the incident through the formal complaints management process.

294. Defendant City has promoted Landry and kept him employed, even though he has a history of misconduct.

295. Defendant City intentionally and purposely established a form of government that gives it full power to justify their agents' misconduct.

296. Defendant City, which maintains full control of its subordinate organizations, was directly involved in the processing, executing, and management of the business functions that wrongfully prosecuted Mr. Young.

297. Defendant City is the supervising organization for IPD and Irving Internal Affairs.

298. On information and belief, all three Defendants assisted in the preparation of the false affidavit by agreeing upon falsehoods to include and exculpatory facts to omit. They did so either while huddling on-scene with their microphones turned off or shortly afterwards, but before producing the false statements appearing to conceal and justify Defendant Landry's directive to arrest Mr. Young based on false statements.

299. Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Young's rights and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

## I. CONCLUSION

300. Defendants' flagrant disregard for their professional obligations, the court system, the rule of law, and Mr. Young's basic dignity led to very real pain, fear, and material costs for Mr. Young.

301. When a government official knowingly, intentionally, purposely, or either with reckless disregard, includes false and otherwise misleading information in a probable cause application, and those same false statements are used as the basis of prosecution, § 1983 invalidates the criminal prosecution pursuant to the Fourteenth Amendment.

302. Therefore, it is well-known that an officer cannot break the law in order to enforce the law. It is also well-known that citizens are protected from unreasonable government intrusion.

303. In this case, Defendant Landry lacked reasonable suspicion to initiate a traffic stop because he intentionally lied about his observations of Mr. Young's driving behavior. Then, when Mr. Young refused to admit to Landry's false accusations, Landry retaliated and directed his subordinates, Hammet and Does, to initiate an arrest and DNA extraction based on his false statements.

304. However, DCDAO terminated all prosecution against Mr. Young because there was no evidence to support Defendant officers' claims about Landry's observations. Defendant officers acted collectively to defraud the magistrate judge into approving the affidavits and warrant applications because the approval was based on the intentionally fabricated evidence.

305. Thereafter, Defendant City, acted with full control of its administrative processes,

relied on the same false statements to file criminal charges, arrest Mr. Young, and authorize a DNA extraction. Finally, Defendant City, also relied on the same false statements to dismiss Mr. Young's Complaint against Defendant officers.

306. Based on the foregoing facts, Mr. Young seeks redress pursuant to § 1983 for civil rights deprivation.

## J. REQUEST FOR RELIEF

307. Defendants' flagrant disregard for their professional obligations, the court system, the rule of law, and Mr. Young's basic dignity led to very real pain, fear, and material costs for Mr. Young.

308. Mr. Young now asks the Court to enter a judgment confirming that these officers are not above the laws they enforce, and that they will be held accountable for abusing their authority.

309. WHEREFORE, on the basis of the foregoing, Mr. Young demands a jury trial for all issues so triable pursuant to the Seventh Amendment of the United States Constitution and Federal Rules of Civil Procedure, and requests that this Court issue the following relief:

(a) Declare that Defendants violated Mr. Young's constitutional rights;

(b) Award compensatory damages against Defendants in an amount to be determined by a jury at trial;

(c) Award punitive damages against Defendants for their willful and egregious violations of the law in an amount to be determined by a jury at trial;

(d) Award reasonable attorneys' fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable law; and

(e) Award such other relief as the Court deems just and proper to restore his criminal record, reputation, and career.

[SIGNATURE PAGE FOLLOWS]

Dated: 10.05.2024

Dallas, TX

Respectfully submitted,

By: _____
DeRonnius R. Young, *Pro se* Litigant
4800 W Lovers Lane (#406)
Dallas, TX 75209
662.518.1784
dryoung@smu.edu

**THIS PAGE IS INTENTIONALLY LEFT BLANK.**

**VERIFICATION**

STATE OF Texas )

                                     ) ss.:

COUNTY OF Dallas )


DeRonnius R. Young, being duly sworn, deposes and says that I am the PLAINTIFF in the case captioned and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on Exhibits provided and I believe them to be true.

_____

DERONNIUS R. YOUNG, PLAINTIFF


Sworn to me this 5th day October 2024
_____
Notary Public

Respectfully submitted,

By: _____
DeRonnius R. Young, *Pro se* Litigant
4800 W Lovers Lane (#406)
Dallas, TX 75209

662.518.1784
dryoung@smu.edu

**PLAINTIFF'S 1ST AMENDED COMPLAINT**             **73**

[SIGNATURE PAGE FOLLOWS]

Dated: 10.05.2024

Dallas, TX

Respectfully submitted,

By: _DeRonnius Young_

DeRonnius R. Young, *Pro se* Litigant
4800 W Lovers Lane (#406)
Dallas, TX 75209
662.518.1784
dryoung@smu.edu

**PLAINTIFF'S 1ST AMENDED COMPLAINT**

**VERIFICATION**

STATE OF Texas                    )

                                  ) ss.:

COUNTY OF Dallas                  )


DeRonnius R. Young, being duly sworn, deposes and says that I am the PLAINTIFF in the case captioned and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on Exhibits provided and I believe them to be true.

DERONNIUS R. YOUNG, PLAINTIFF


Sworn to me this 5th day October 2024

Notary Public


Respectfully submitted,

By: DeRonnius R. Young, *Pro se* Litigant
4800 W Lovers Lane (#406)
Dallas, TX 75209

662.518.1784
dryoung@smu.edu