IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DERONNIUS R. YOUNG,                    §
                                       §
                    Plaintiff,         §
                                       §      Civil Action No. 3:23-CV-1423-D
VS.                                    §
                                       §
CITY OF IRVING, et al.,                §
                                       §
                    Defendants.        §

MEMORANDUM OPINION
AND ORDER

*Pro se* plaintiff DeRonnius R. Young ("Young") brings this action against the City of Irving ("City") and three individual Irving Police Department ("IPD") officers alleging various constitutional violations under 42 U.S.C. §§ 1983 and 1988. The individual officers move to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified immunity and on the basis that Young has failed to state a claim on which relief can be granted. The City also moves to dismiss under Rule 12(b)(6) based on Young's failure to state a claim. For the reasons that follow, the court grants the City's motion to dismiss, grants in part and denies in part the individual officers' motion to dismiss, and dismisses Young's actions against the City and IPD Sergeant John Phillips ("Sgt. Phillips")[1] by Rule 54(b) final judgment filed today.

---

[1] In the court's prior memorandum opinion and order, it referred to Sgt. Phillips as "Officer Phillips." *See, e.g.*, *Young v. City of Irving* (*Young I*), 2024 WL 4193936, at *2 (N.D. Tex. Sept. 12, 2024) (Fitzwater, J.).

I

On June 25, 2021 IPD Sergeant Adam Landry ("Sgt. Landry")[2] activated his patrol vehicle lights as Young drove past him while exiting the parking garage at a concert venue in the City.[3]  Young pulled over, parked, and exited his vehicle, allegedly "to learn why Sgt. Landry requested his attention since Young had not violated any traffic laws."  Am. Compl. ¶ 35.  Sgt. Landry informed Young that he had pulled him over because he was "driving crazy while sounding his car horn."  *Id.* ¶ 36.

Young alleges that he agreed to comply with Sgt. Landry but was unwilling to admit to Sgt. Landry's "false claims" that he observed Young driving on the wrong side of the road multiple times while continually honking his horn.  *Id.* ¶ 48.  Young then called 911 to ask for a supervisor to come to the scene because he believed that Sgt. Landry was "refus[ing] to establish a valid claim of [his] violation of the law."  *Id.* ¶ 49.  According to Young, a "mob" of officers soon arrived at the scene and immediately attacked Young, shooting him repeatedly with stun guns and beating him to the ground.  *Id.* ¶ 51.

---

[2]In *Young I* Sgt. Landry is referred to as "Officer Landry."  *See, e.g.*, *Young I*, 2024 WL 4193936, at *1.

[3]In deciding defendants' Rule 12(b)(6) motions, the court construes the first amended complaint in the light most favorable to Young, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Young's favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

- 2 -

After they arrested Young and placed him in the squad car, Sgt. Landry, Officer Andrew Hammett ("Officer Hammett"), and several other unidentified officers closed the door to briefly huddle together out of earshot. Officer Hammett then obtained a search warrant so that he could obtain a blood sample from Young. In the affidavit for search warrant ("Search Warrant Affidavit"), Officer Hammett provided the following probable cause narrative:

> On 06/25/2021 at around 12:30 am, [Sgt. Landry] observed a gray 2015 Nissan Altima . . . driving West in the East bound lanes, while honking his horn, on Harmony Way in Irving. The vehicle then went through a parking garage while honking its horn and exited headed East in the West bound lanes on Melody Way. Sgt[.] Landry conducted a traffic stop[.] Young exited the vehicle and immediately began verbally resisting and trying to walk away. Sgt. Landry could smell the odor of an alcoholic beverage coming from [Young]'s breath. [Young] physically resisted detention and arrest. [Young] refused to perform any SFSTs. Based on [Young]'s driving behavior, the smell of an alcoholic beverage on his breath, and his actions during our interaction, it was determined [that Young] had lost the normal use of his mental and physical faculties, due to the introduction of some substance into his body, and was intoxicated. [Young] was placed under arrest and read the DWI statutory warning.

Ds. App. (ECF No. 45-1) at 10.

After they obtained the search warrant, Sgt. Landry and Officer Hammett transported Young to a local hospital, where they oversaw the "forcible extraction of multiple vials of [Young]'s blood, which they then submitted for examination by a government agent." Am. Compl. ¶ 109. Young was then transported to the City Jail, where he remained until 7:30 a.m. on Monday, June 28, 2021. In an Affidavit for Determination of Probable Cause

("Probable Cause Affidavit"), Officer Hammett provided the same narrative that he had included in the Search Warrant Affidavit.  Based on the statements in the Probable Cause Affidavit, the magistrate found the existence of probable cause for the charged felony offense.  Young was released from custody on Monday, June 28, 2023, with several "restrictive and burdensome conditions of release."  *Id*. ¶ 125.

Young was eventually charged with driving while intoxicated ("DWI"), but on April 18, 2023 the criminal court dismissed the case based on the district attorney's statement that "[t]he State will be unable to make a prima facie case."  Am. Compl. at 14.  This lawsuit followed.

In Young's first amended complaint ("amended complaint"), which is his operative pleading,[4] he alleges claims under 42 U.S.C. § 1983 against Sgt. Landry, Officer Hammett, Sgt. Phillips, and "Defendants John and Jane Does" for deliberately fabricating evidence, in violation of the Due Process Clause of the Fourteenth Amendment (count I); retaliating against him for questioning why he was detained for a traffic stop, in violation of the First Amendment (count IV); and civil conspiracy (count V).  He alleges a claim under 42 U.S.C. §§ 1983 and 1988 against the City for failure to intervene, supervise, manage, and deliberate indifference and for *Monell*[5] liability (count VII).  And he alleges claims under 42 U.S.C. § 1983 against all defendants for reliance on false statements and material omissions in an

---

[4]In *Young I* the court dismissed Young's complaint but granted him leave to replead. *Young I*, 2024 WL 4193936, at *15.

[5]*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

application for a warrant to forcibly extract and examine his blood, in violation of the Fourth Amendment (count II); for reliance on false statements and material omissions in a probable cause affidavit to erroneously arrest him (count III), and for failure to intervene (count VI).[6]

Sgts. Landry and Phillips and Officer Hammett (collectively, the "Defendant Officers") move under Rule 12(b)(6) to dismiss Young's amended complaint on qualified immunity grounds and on the basis that Young has failed to state a claim on which relief can be granted. The City moves to dismiss under Rule 12(b)(6), contending that Young has failed to state a claim on which relief can be granted. Young opposes both motions, which the court is deciding on the briefs, without oral argument.

---

[6]In the amended complaint's "Index of Counts," Young alleges these claims:

(1) count I, under § 1983 against all defendant officers for deliberately fabricating evidence to frame Young, in violation of the Fourteenth Amendment Due Process Clause;
(2) count II, under § 1983 against all defendants for reliance on false statements and material omissions in an application for a warrant to forcibly extract and examine Young's blood, in violation of the Fourth Amendment;
(3) count III, under § 1983 against all defendants for reliance on false statements and material omissions in a probable cause affidavit to erroneously arrest Young;
(4) count IV, under § 1983 against all defendant officers for retaliation against Young for questioning the legitimacy of—and his legal obligation—to know why he was detained for a traffic stop;
(5) count V, under § 1983 against all defendant officers for civil conspiracy;
(6) count VI, under § 1983 against all defendants for failure to intervene; and
(7) count VII, under §§ 1983 and 1988 against the City of Irving for failure to intervene, supervise, manage, and deliberate indifference *Monell* liability.

Am. Compl. at 6.

- 5 -

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court begins with the Defendant Officers' motion to dismiss Young's claims against Sgt. Phillips based on the doctrine of qualified immunity.

A

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity likewise applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the

- 7 -

officer's conduct violated a constitutional right? This must be the initial inquiry.")).[7] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

---

[7]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id*. The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at 242.

B

The Defendant Officers contend, as they did in *Young I*, that Sgt. Phillips is entitled to qualified immunity because Young has not alleged that he was personally involved in any alleged constitutional violation.

"For there to be liability under section 1983, a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights, or there must be a causal connection between the actions of that person and the constitutional right sought to be redressed." *King v. Louisiana*, 294 Fed. Appx. 77, 83 (5th Cir. 2008) (per curiam) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)) (affirming dismissal of claims against individual defendants, based on qualified immunity, where the allegations against these defendants failed to set forth any constitutional violation); *see also Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) ("In order to state a cause of action under § 1983, [plaintiff] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.").

The only substantive allegations in the amended complaint regarding Sgt. Phillips are that he "'manages' the internal investigations process for the City of Irving, and he told Mr. Young that the department's policy permits omission of video evidence," Am. Compl. at 3 n.2; that he facilitates the internal investigations process on behalf of the City; and that "via IPD internal affairs," he "ratified Landry/Hammet[t]/Does misconduct based on the falsified information submitted in Defendant officers' probable cause applications," *id.* ¶ 14. These

assertions do not plausibly allege that Sgt. Phillips was in any way involved in the deprivation of Young's constitutional rights. Accordingly, the court grants the Defendant Officers' motion to dismiss Young's § 1983-based claims to the extent they are alleged against Sgt. Phillips.

IV

The court next considers Young's Fourth Amendment-based § 1983 claims (counts II and III) against the Defendant Officers. The Defendant Officers move to dismiss these claims based on qualified immunity, contending that Young has failed to plausibly allege a constitutional violation.

A

To the extent that Young alleges that Sgt. Landry or Officer Hammett (collectively, the "Arresting Officers") violated his Fourth Amendment rights during either the initial traffic stop or the initial arrest, which occurred prior to the Arresting Officers' obtaining the Search Warrant Affidavit—*see United States v. Massi*, 761 F.3d 512, 522 (5th Cir. 2014) ("An arrest occurs when, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980))—the court grants the Defendant Officers' motion to dismiss.

The court held in *Young I* that the initial traffic stop was justified—and no Fourth Amendment violation occurred—because Sgt. Landry reasonably believed that Young had violated Tex. Transp. Code Ann. § 547.501(c) (West 2022). *Young I*, 2024 WL 4193936,

- 10 -

at *6.  Young's conclusory allegation in the amended complaint that "[a]t the time Defendant Landry initiated the traffic stop with Mr. Young, he lacked reasonable suspicion," Am. Compl. ¶ 57; *see also id.* ¶ 239, does not change the court's conclusion in this respect. Accordingly, for the reasons explained in *Young I*, the court dismisses Young's § 1983-based Fourth Amendment claim based on the initial traffic stop.

In *Young I* the court also held that the Arresting Officers had probable cause to arrest Young based on undisputed video evidence that clearly showed Young violating Tex. Penal Code Ann. §§ 38.02(b) and § 38.03(a) (West 2016) in their presence.  *Young I*, 2024 WL 4193936, at *7-8.  Young does not dispute that the Arresting Officers had probable cause to arrest him based on these observed violations.  He instead alleges that "Defendants knew they did not have reasonable suspicion or probable cause to arrest [him] for DWI."  Am. Compl. ¶ 53.  But whether the Arresting Officers *also* had probable cause to arrest Young for violating Tex. Penal Code Ann. § 49.04(a) (West 2011)[8] is not controlling.  This is so because "[t]he existence of probable cause for *any offense* is sufficient to defeat a claim of false arrest."  *Livingston v. Texas*, 2023 WL 4931923, at *3 n.3 (5th Cir. Aug. 2, 2023) (per curiam) (emphasis added) (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that a warrantless arrest is justified where the facts known to the officer provide probable cause to believe a crime has been committed, even where the offense charged is not closely related to the offense for which the officer has probable cause); *Rose*

_____

[8]Under Tex. Penal Code Ann. § 49.04(a), "[a] person commits an offense if the person is intoxicated while operating a motor vehicle in a public place."

- 11 -

*v. Herrera*, 2023 WL 10476031, at *6 (S.D. Tex. Feb. 8, 2023) ("The existence of probable cause for any offense is sufficient to defeat a claim of false arrest, even if the offense giving rise to probable cause is not the same as, or even closely related to, the offense articulated by the officer at the scene." (citing *Devenpeck*, 543 U.S. at 153-55)).

To the extent that Young relies on the dismissal of the charges against him to allege that the Arresting Officers lacked probable cause to arrest him, *see, e.g.*, Am. Compl. ¶¶ 4, 5 (alleging that criminal District Attorney dismissed all three charges against him for "failure to establish prima facie," and maintaining that "[i]f a prosecutor cannot establish a prima facie case, that almost certainly means she did not have probable cause to support the arrest of the defendant"), the court rejects this argument. "Probable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." *United States v. Carrillo-Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994) (citing *United States v. De Los Santos*, 810 F.2d 1326, 1336 (5th Cir. 1987)). "Probable cause exists if, under the totality of circumstances, there is a fair probability that . . . an illegal act is taking place." *United States v. Thompson*, 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (Fitzwater, C.J.) (citing *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006)). Young has not plausibly pleaded that the State's concession of its inability to "establish [a] prima facie" case was a reference to a less onerous standard than probable cause.

Moreover, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for

every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). "The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, [the court must] focus on the validity of the arrest." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995). The fact that the charges against Young were ultimately dismissed "is of no consequence." *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994).

Young has not plausibly alleged that Sgt. Landry initially stopped him without reasonable suspicion or that his arrest at the scene was not supported by probable cause. Accordingly, Sgt. Landry and Officer Hammett are entitled to qualified immunity to the extent that Young bases his § 1983 claim alleged in count III on the initial traffic stop and arrest.

B

To the extent, however, that Young alleges that the Arresting Officers violated his Fourth Amendment rights when they included false statements and material omissions in the Search Warrant Affidavit (count II) and Probable Cause Affidavit (count III), the court holds that Young has plausibly alleged a constitutional violation.

1

Generally, the existence of a valid warrant, issued by a neutral magistrate, establishes probable cause. *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1008 (5th Cir. 2003) (citing *Michigan v. Summers*, 452 U.S. 692, 703-04 (1981)). But under *Franks v. Delaware*, 438 U.S. 154 (1978), "even if an independent magistrate judge approves a warrant application, a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the

warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth, and (2) the allegedly false statement is necessary to the finding of probable cause." *Reitz v. Woods*, 85 F.4th 780, 793 (5th Cir. 2023) (internal quotation marks omitted) (quoting *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018)).  "To determine if an allegedly false statement is 'necessary to the finding of probable cause,' the court must consider the affidavit as if those false statements were removed and consider whether the 'remaining content' would still support a probable cause finding." *Garcia v. Orta*, 47 F.4th 343, 352 (5th Cir. 2022) (citation omitted); *see also Hughes v. Garcia*, 100 F.4th 611, 620 (5th Cir. 2024) (the last element requires courts to conduct a "corrected affidavit" analysis to determine "whether the warrant affidavit would support probable cause if the misstatements and material omissions were eliminated.").  Qualified immunity is warranted "if the corrected affidavit would have supported a reasonable officer's belief that probable cause existed." *Garcia*, 47 F.4th at 352 (citing *Malley*, 475 U.S. at 344-45).

As the court has already explained above, "[p]robable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." *Carrillo-Morales*, 27 F.3d at 1062.  "[C]ourts examine the totality of the circumstances" to determine whether probable cause existed, *United States v. Powell*, 732 F.3d 361, 372 (5th Cir. 2013) (citing *Illinois v. Gates*, 462 U.S. 213, 234 (1983)), "including the officers' training and experience as well as their knowledge of the situation at hand," *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1995).  "Probable cause exists if, under the totality

of circumstances, there is a fair probability that . . . an illegal act is taking place." *Thompson*,

2012 WL 1161609, at *3 (citing *Newman*, 472 F.3d at 236-37).

2

In the amended complaint, Young alleges that Sgt. Landry and Officer Hammett

"defrauded" the magistrate by "falsely reporting" the following in the Probable Cause

Affidavit, investigation reports, and "supporting affidavits":

> a) Sgt. Landry observed a gray 2015 Nissan Altima (MLD2214) driving WEST in the EAST bound lanes, while honking his horn.
>
> b) The vehicle went through the parking garage while honking its horn and exited headed EAST in the WEST bound lanes on Melody Way.
>
> c) Sgt. Landry could smell the odor of an alcoholic beverage coming from Defendant's breath.
>
> d) The Defendant refused to perform any [standard field sobriety tests ("SFSTs")].
>
> e) Based on the Defendant's driving behavior, the smell of an alcoholic beverage on his breath, and his actions during our interaction, it was determined that the Defendant had lost the normal use of his mental and physical faculties, due to the introduction of some substance in his body and was intoxicated.
>
> f) The Defendant [Mr. Young] was placed under arrest and read the DWI statutory warning.

Am. Compl. ¶ 43 (alteration in original) (footnotes and underlining omitted).[9] Young alleges

---

[9] Although Young alleges that he "conceded to sounding his car horn," Am. Compl. ¶ 68, he disputes that Sgt. Landry observed him "driving on the wrong side of the road multiple times, while honking his horn continually," *id.* ¶ 48 (emphasis omitted).

that these statements were untrue; that Sgt. Landry and Officer Hammett knew they were not true; that Sgt. Landry "did not at any point in time witness [him] driving on the wrong side of the road," *id.* ¶ 66 (underlining omitted); that he "was not sounding his horn in the manner [Sgt.] Landry falsely described," *id.* ¶ 68; that there was "no evidence found to support Defendants' claims for alcohol odor," *id.* ¶ 71; and that "at no time while [he] was conscious and responsive did officers ask [him] to participate in [S]FSTs," *id.* ¶ 82.    The court is deciding the Defendant Officers' Rule 12(b)(6) motion based on the allegations in the amended complaint, accepting as true Young's contention (and allegations in support) that the statements from the Search Warrant and Probable Cause Affidavits set out in ¶ 43 are false.  *See, e.g*, *Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021) (holding that defendant officers were not entitled to dismissal of § 1983 *Franks* claim based on qualified immunity because "[t]aking [plaintiffs'] allegations as true and viewing . . . them in the light most favorable to the Plaintiffs, the 'corrected' content of the affidavit is insufficient to establish particularized probable cause for arrest based on supposed violations of [Tex. Penal Code § 71.02].").  "Assuming that the [allegations in ¶ 43] constitute materially false statements or omissions in the warrant affidavit . . . , *Franks* requires the court to determine whether, excluding such errors and omissions, the remaining 'corrected affidavit' establishes probable cause for the warrant's issuance."  *Id.* (quoting *Winfrey*, 901 F.3d at 495).  The court concludes that in the context of this Rule 12(b)(6) motion that it does not.

Under Tex. Penal Code Ann. § 49.04(a), "[a] person commits an offense if the person is intoxicated while operating a motor vehicle in a public place."  "When a 'search warrant

sought is for blood evidence to prove intoxication, the magistrate typically must determine probable cause exists that a blood test would provide evidence showing [the arrestee] was intoxicated.'" *Forbes v. Harris Cnty., Tex.*, 2019 WL 2085670, at *9 (S.D. Tex. May 13, 2019) (alterations in original) (quoting *Islas v. State*, 562 S.W.3d 191, 196 (Tex. App. 2018, pet. denied)), *aff'd*, 804 Fed. Appx. 233 (5th Cir. 2020).  If the court removes the allegedly false statements from the Search Warrant and Probable Cause Affidavits, the remaining particularized facts are these:  the traffic stop occurred at around 12:30 a.m.; after Sgt. Landry conducted the traffic stop, Young "exited the vehicle and immediately began verbally resisting and trying to walk away"; and Young "physically resisted detention and arrest." Ds. App. (ECF No. 45-1) at 10.  These facts, together with the other parts of the Search Warrant and Probable Cause Affidavits that the court can consider, do not establish probable cause for a blood draw or arrest based on an alleged violation of § 49.04(a) because the "corrected affidavit" does not suggest that Young was *intoxicated*.  *See, e.g.*, *Terwilliger*, 4 F.4th at 283 ("corrected affidavit" did not establish probable cause for arrest based on violation of organized criminal activity statute where "the remaining particularized facts in the affidavit are that '[a]fter the altercation, the subject was apprehended at the scene, while wearing common identifying distinct signs or symbols.'").  It states only the time of the traffic stop and that Young verbally and physically resisted detention and arrest.  Although this conduct *could be* consistent with that of an intoxicated individual, it could also be consistent with that of a sober individual who is angered by the traffic stop.  Absent any observation that would link Young's behavior to the consumption of alcohol—e.g., erratic

- 17 -

driving, smelling of alcohol, or refusing to perform SFSTs—the corrected affidavit "does not contain sufficient information to satisfy the probable-cause requirement." *Winfrey*, 901 F.3d at 495.[10]

Accordingly, based on the allegations in the amended complaint, the court concludes that a reasonable magistrate "would not have issued a warrant on the basis of th[e] corrected affidavit" because it lacks any indication that Young operated a motor vehicle while intoxicated.[11]  *Id*. at 496.  The court denies the Defendant Officers' motion to dismiss Young's Fourth Amendment claims—counts II and III—to the extent that they are based on the allegedly false statements and material omissions in the Search Warrant and Probable Cause Affidavits.[12]

---

[10]*See, e.g.*, *Forbes*, 2019 WL 2085670, at *10 ("Erratic driving as well as post-driving behavior, including slurring of speech, inability to perform field-sobriety tests, bloodshot eyes and admissions by the suspect concerning what, when, and how much he had been drinking, all constitute evidence that would raise an inference that appellant was intoxicated at the time of driving." (quoting *Thom v. State*, 437 S.W.3d 556, 562 (Tex. App. 2014, no pet.)); *see also, e.g.*, *State v. Castro*,  2014 WL 4808738, at *4 (Tex. App. Sept. 23, 2014, no pet.) (probable cause to sign search warrant where "[a]ppellee smelled of alcoholic beverage, his eyes were glassy and his speech was slurred[,] he refused to participate in any field sobriety tests, and after he was arrested and transported to jail, he refused to give a blood sample."); *Learning v. State*, 227 S.W.3d 245, 249 (Tex. App. 2007, no pet.) (probable cause existed for arrest for DWI where defendant veered into an adjacent lane four times, smelled of alcohol, and admitted he had been drinking).

[11]Because the court concludes that the "corrected" affidavit—i.e., the affidavit with the allegedly false statements excised—would not establish probable cause, it does not consider whether inclusion of the allegedly *omitted* facts, *see* Am. Compl. ¶ 103, would further prevent the Search Warrant or Probable Cause Affidavit from supporting a finding of probable cause.

[12]The Defendant Officers have only moved to dismiss Young's Fourth Amendment claim under the first prong of the qualified immunity analysis, i.e., on the ground that Young

- 18 -

3

Although the court is denying the Defendant Officers' motion with respect to counts II and III, it notes that the panel in *Terwilliger* recently explained:

> *Franks*, of course, requires more than bare assertions of falsehood. Instead, they "must be accompanied by an offer of proof . . . [and] point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Franks*, 438 U.S. at 171. Evidence must be proffered and "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id*. While the Plaintiffs have met their burden of alleging a *Franks* violation sufficient to withstand the test of *Iqbal*/*Twombly*, if they press this litigation, they must offer tangible proof to overcome the "presumption of validity with respect to the affidavit supporting the . . . warrant." *Id*. Each Plaintiff must demonstrate that, as to him, the affidavit was deliberately or recklessly false.

4 F.4th at 283 (alterations and ellipses in original). Young will be required to meet this same burden if this case proceeds to summary judgment or trial. But because his allegations are sufficient at the Rule 12(b)(6) stage to plausibly allege a *Franks* violation, the court denies the Defendant Officers' motion to dismiss Young's claims based on the allegedly false statements and omissions included in the Search Warrant and Probable Cause Affidavits.

---

has not alleged a constitutional violation. Accordingly, the court has not considered whether the Defendant Officers would be entitled to qualified immunity under *Saucier*'s second prong.

V

The court next considers Young's claim under § 1983 for "deliberately fabricating evidence to frame [him] in violation of the Fourteenth Amendment's Due Process Clause," alleged in count I. Am. Compl. at 6.

A

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Young's substantive due process claim is based on allegations that Sgt. Landry lied about Young's driving behavior so he could initiate an unauthorized traffic stop; the Arresting Officers wrote and submitted sworn affidavits containing statements they knew were false and omitted exculpatory evidence they knew to be true; and the Arresting Defendants fabricated multiple police reports to conceal their misconduct, corroborate their other fabricated evidence, and further retaliate against Young. This is the same factual basis that Young relies on to support his Fourth Amendment claim. As explained above, the Fourth Amendment protects against "unreasonable . . . seizures" by the government and the issuance of warrants absent probable cause. Because the Fourth Amendment protects against the type of conduct that Young alleges in support of his substantive due process claim, this claim is "covered by" the Fourth Amendment and should be analyzed only under that constitutional provision. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *see also*

*Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) ("To the extent that [plaintiff] seeks to assert a distinct cause of action under substantive due process, that claim must fail . . . . Here, [plaintiff's] claims are rooted in procedural due process, the Equal Protection Clause, and the First Amendment.  Those provisions are our exclusive guideposts." (citations omitted)).

B

Insofar as Young intends in count I to plead a Fourth Amendment malicious prosecution claim, the court grants the Defendant Officers' motion to dismiss this claim under the second prong of the qualified immunity analysis—i.e., on the ground that Young has not plausibly alleged that the Arresting Defendants violated a right that was "clearly established" at the time of the challenged conduct.[13]

A right is clearly established for purposes of the second step of the qualified immunity analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that his conduct violated the statutory or constitutional right at issue.  *Saucier*, 533 U.S. at 206.  The Supreme Court did not recognize a malicious prosecution claim under § 1983 until the year 2022.  *See Thompson v. Clark*, 596 U.S. 36, 42 (2022); *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023).  Young was arrested on June 25, 2021, and the Search Warrant and Probable Cause Affidavits were both executed that same day.  At that time, the Fifth Circuit did not recognize a malicious prosecution claim under § 1983.  *See Castellano*

---

[13]Young has not responded to this ground of the Defendant Officers' motion.

- 21 -

*v. Fragozo*, 352 F.3d 939, 954 (5th Cir. 2003) (en banc) (disclaiming existence of malicious prosecution claim under Section 1983).

Accordingly, the right to be protected under the Fourth Amendment from malicious prosecution was not clearly established at the time of the Arresting Defendants' conduct. *See Moore v. City of Dallas*, 2024 WL 913368, at *3 (5th Cir. Mar. 4, 2024) (per curiam); *Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir. 2023) (affirming dismissal of pre-*Thompson* Fourth Amendment malicious prosecution claim because "this court's caselaw explicitly disclaimed the existence [of such a claim] at the time of [defendant's] alleged conduct") (affirming dismissal of pre-*Thompson* Fourth Amendment malicious prosecution claim because "this court's caselaw explicitly disclaimed the existence [of such a claim] at the time of [defendant's] alleged conduct"). Because it would not have been clear to the Arresting Defendants in 2021 that their conduct violated the Fourth Amendment's protection against malicious prosecution, they are entitled to dismissal based on qualified immunity as to Young's malicious prosecution claim.

VI

The court now turns to Young's § 1983-based First Amendment claim for "retaliation against [him] for questioning the legitimacy of—and his legal obligation—to know why he was detained for a traffic stop." Am. Compl. at 6 (count IV). The Defendant Officers move to dismiss this claim based on qualified immunity, contending that Young has not plausibly alleged that they violated his First Amendment rights.

- 22 -

A

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To prevail on a First Amendment retaliation claim, a plaintiff must show that he was engaged in constitutionally protected activity, the officer's actions injured him, and "the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017).

"To ensure that officers may go about their work without undue apprehension of being sued, [the court] generally review[s] their conduct under objective standards of reasonableness." *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019). "A retaliation claim is only available 'when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'" *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024) (quoting *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves*, 587 U.S. at 398. It must be a "'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. at 399; *see also Bailey v. Ramos*, 125 F.4th 667, 685 (5th Cir. 2025) ("A retaliation claim is only available 'when non-retaliatory grounds are in fact insufficient to provoke' the arrest, meaning that the officer's subjective motivation must be the but-for cause of the adverse action against the plaintiff."). "Thus, in the context of retaliatory arrest or prosecution, to

prove causation, a plaintiff generally must show that the officers lacked probable cause to make the arrest." *Degenhardt*, 117 F.4th at 758 (citation omitted).  The Fifth Circuit has "likewise held that if an officer has a reasonable suspicion to initiate a seizure, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Id.* (quoting *Allen*, 815 F.3d at 245).

B

The Defendant Officers move to dismiss Young's First Amendment claim on the ground, *inter alia*, that Young has failed to plausibly allege that the Arresting Officers' actions were motivated by constitutionally protected speech because there was reasonable suspicion for Sgt. Landry to contact Young for violating the Transportation Code and there was probable cause to arrest Young for multiple violations of the Transportation and Penal Codes.  Young has not responded to the Defendant Officers' contention that he has failed to plausibly allege "but-for" causation in support of his First Amendment retaliation claim.  He argues only that he "has proven that Defendants retaliated against him for challenging [Sgt.] Landry's unlawful detention in violation of the First and Fourth Amendments when Sgt. Landry became aggravated with Mr. Young because he refused to concede to [Sgt.] Landry's false claims that he observed Mr. Young 'driving on the wrong side of the road multiple times, while sounding his horn continuously.'" P. Rep. (ECF No. 46) at 4 (emphasis and citation omitted).

The court has already held that the initial traffic stop was justified—and Young has failed to plausibly plead that a Fourth Amendment violation occurred—because Sgt. Landry

- 24 -

reasonably believed that Young had violated Tex. Transp. Code Ann. § 547.501(c).  *See supra* § IV(A); *see also Young I*, 2024 WL 4193936, at *6.  Accordingly, because Sgt. Landry had reasonable suspicion sufficient to support an investigatory stop *before* Young engaged in any allegedly protected speech, Young has not plausibly pleaded that First Amendment retaliation was a "but for" cause of the traffic stop.  Nor could it have been a "but for" cause of Young's arrest.  Undisputed video evidence shows Young violating Tex. Penal Code Ann. §§ 38.02(b) and 38.03(a) in the Arresting Officers' presence.  Young has therefore failed to plausibly plead that the Arresting Officers lacked probable cause to arrest him.  *See, e.g.*, *Degenhardt*, 117 F.4th at 758-59 (affirming dismissal of First Amendment retaliation claim where defendants "established a lawful basis to search the car and to cite the Degenhardts for possessing alcohol as minors and driving recklessly," and, "[a]ccordingly, [plaintiffs] have not pleaded sufficient facts to show that [defendants'] non-retaliatory grounds for the seizures were insufficient to provoke their actions.").

     To the extent that Young alleges that the Arresting Officers "would not have arrested [him] but for his questioning of Defendant Landry's conduct and the legal basis of his requests," Am. Compl. ¶ 268, that the Arresting Officers deliberately fabricated evidence against him "because of his speech," *id.* ¶ 269, and that "[b]ut for [his] engagement in constitutionally protected activity, Defendants would not have arrested and fabricated false evidence to incriminate him," *id.* ¶ 271, Young's conclusory and purely speculative allegations are insufficient to plausibly allege that the Arresting Officers were "substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Alexander*, 854

F.3d at 308.  Accordingly, because Young has failed to plausibly allege that the Arresting Officers retaliated against him for the exercise of his First Amendment rights, the court grants their motion to dismiss Young's § 1983 First Amendment claim based on qualified immunity.

## VII

Young alleges in count V a constitutional conspiracy claim based on the allegation that the officers on the scene, including Sgt. Landry and Officer Hammett, "agreed, at Defendant Landry's direction, to fabricate evidence against [Young], in the form of false affidavits, police reports and sworn statements, which contradict their own observations and statements on the scene."  Am. Compl. ¶ 278.

### A

The Defendant Officers move to dismiss this claim on the same grounds that they raised in their previously-filed motion to dismiss, which they incorporate into the present motion.  Young has not responded to this ground of the Defendant Officers' motion other than to argue that he

> has provided overwhelming evidence that Defendant officers conspired to erroneously charge Mr. Young with DWI, Failure to ID, and Resist Arrest based on [Sgt.] Landry's false statements of Mr. Young's driving behavior, which caused other officers to immediately taze and arrest Mr. Young, even though he called 9-11 for assistance because he reasonably feared for his safety.

P. Resp. (ECF No. 46) at 5.

- 26 -

B

To state a civil conspiracy claim under § 1983, Young must allege both an agreement among the defendants to commit an illegal act and an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *see also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) ("[A] conspiracy claim is not actionable without an actual violation of section 1983."). It is a general principle in conspiracy law that a conspiracy requires two or more persons or entities. *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1953). This principle has given rise to the intracorporate conspiracy doctrine, which provides that a "corporation cannot conspire with itself any more than a private individual can," and "that the acts of the agents are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citing *Nelson Radio*, 200 F.2d at 914). "[B]ecause the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy." *Walters v. McMahen*, 795 F.Supp.2d 350, 358 (D. Md. 2011). "Although the intracorporate conspiracy doctrine arose in the anti-trust context, it has been applied to public entities and has been extended to civil rights conspiracies under § . . . 1983." *Collins v. Bauer*, 2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012) (Ramirez, J.) (citations omitted), *rec. adopted*, 2012 WL 444014 (N.D. Tex. Feb. 10, 2012) (Boyle, J.); *see also Swilley v. City of Houston*, 457 Fed. Appx. 400, 404 (5th Cir. 2012) (per curiam) (holding that § 1985 claim fails because, *inter alia*, "[t]he City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves."); *Thompson v. City of Galveston*, 979 F.

Supp. 504, 512 (S.D. Tex. 1997) (granting motion to dismiss § 1983 conspiracy claim where individual defendants were both "employees of the Galveston Police Department" and "for the purposes of Plaintiff's § 1983 conspiracy claim, the Galveston Police Department and its employees constitute a single legal entity which is incapable of conspiring with itself.").

Young does not dispute that the Defendant Officers are all employees of the City. *See* Am. Compl. ¶ 23 ("All individuals employed by the IPD are employees of the city.). Nor does he provide any reason why the intracorporate conspiracy doctrine does not preclude his conspiracy claim. Accordingly, for the reasons explained here and in *Young I*, 2024 WL 4193936, at *11, the court grants the Defendant Officers' motion to dismiss Young's civil conspiracy claim (count V).[14]

### VIII

The Defendant Officers move to dismiss Young's § 1983 failure to intervene claim (count VI) under the second prong of the qualified immunity analysis, contending, *inter alia*, that Young has cited no authority to establish that the particular facts he alleges as to the Defendant Officers violate any clearly established law. Young has not responded to the Defendant Officers' argument.

An official's failure to intervene in another's use of excessive force[15] against an

---

[14]The City is also entitled to dismissal of Young's conspiracy claim on this same ground. Although the City did not specifically move to dismiss the conspiracy claim, it did incorporate the Defendant Officers' motion to dismiss. *See* City Br. (ECF No. 44) at 8-9.

[15]To the extent that Young's § 1983 failure to intervene claim is based on the alleged use of excessive force, the court held in *Young I* that the use of force in this case did not

arrestee may violate the Constitution and subject the official to § 1983 liability.  *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).   To prevail on a bystander liability claim, a plaintiff must establish that the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (citation omitted).  As a preliminary matter, it is unclear whether Young intends to bring his failure to intervene claim against either Sgt. Landry or Officer Hammett, who he has alleged were the primary actors involved in the deprivation of his constitutional rights.  Assuming that he does, Young has not plausibly alleged that, by failing to "intervene[] to stop the retaliatory arrest," Am. Compl. ¶ 54, the Arresting Officers violated a clearly established right.  He cites no authority that would have put the Arresting Officers on notice that their failure to intervene under the circumstances would result in a violation of Young's constitutional rights.  Nor does he even respond to the Defendant Officers' contention that he has cited no authority to establish that the particular facts he alleges as to Sgt. Landry or Officer Hammett violate any clearly established law.

Accordingly, based on the doctrine of qualified immunity, the court grants the Defendant Officers' motion to dismiss Young's § 1983 failure to intervene claim asserted in

---

violate the Fourth Amendment.  *Young I*, 2024 WL 4193936, at *9.  Without a constitutional violation, Young's bystander liability claim must fail.  *See, e.g.*, *Est. of Parker v. Miss. Dep't of Pub. Safety*, 728 F.Supp.3d 372, 391 (S.D. Miss. 2024) (Where "no constitutional right was violated . . . there can be no *failure to intervene* in preventing a violation." (citing cases)).

count VI.

## IX

The court now turns to Young's claim asserted in count VII against the City under 42

U.S.C. §§ 1983 and 1988 and *Monell*.[16]

## A

A municipality is a "person" subject to suit under § 1983 under certain circumstances.

*See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Although a

municipality cannot be held liable simply on a theory of respondeat superior, *id.* at 691, it can

be held liable if a deprivation of a constitutional right is inflicted pursuant to an official

policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

Municipal liability requires proof of three elements: "(1) an official policy (or custom), of

which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a

constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of

Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d

325, 328 (5th Cir. 2002)); *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th

Cir. 2018).

The first element requires that Young adequately plead an official policy or custom.

"[A] policy can be shown through evidence of an actual policy, regulation, or decision that

---

[16]To the extent that Young's § 1983 Fourth Amendment and failure to intervene claims (counts II, III, and VI) are alleged against "all defendants," the City is entitled to dismissal of these claims for the reasons explained.

- 30 -

is officially adopted and promulgated by lawmakers or others with policymaking authority."

*Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir.

2003)).  Although a "single decision by a [policymaker] may, under certain circumstances,

constitute a policy for which a [municipality] may be liable[,] . . . this 'single incident

exception' is extremely narrow and gives rise to municipal liability only if the municipal

actor is a final policymaker."  *Id.* (citations omitted) (second alteration in original).  A

custom is "a persistent, widespread practice of City officials or employees, which, although

not authorized by officially adopted and promulgated policy, is so common and well-settled

as to constitute a custom that fairly represents municipal policy."  *Piotrowski*, 237 F.3d at

579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per

curiam)).

        To satisfy the second element, Young must adequately plead the identity of a

policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d

244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

"A 'policymaker' must be one who takes the place of a governing body in a designated area

of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d

762, 769 (5th Cir. 1984) (en banc)).  "City policymakers not only govern conduct; they

decide the goals for a particular city function and devise the means of achieving those goals

. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728

F.2d at 769.  "[The court's] analysis must also take into account the difference between final

decisionmaking authority and final policymaking authority, a distinction that this circuit

recognized as fundamental . . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Young adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Young must therefore plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

Alternatively, a plaintiff may assert a failure-to-train theory of municipal liability. "Failure to train is a separate theory of municipal liability, but the same standard applies both

to a failure to train claim and to a municipal liability claim." *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.) (citations omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (brackets omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. "[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *City of Canton*, 489 U.S. at 388).

B

The City moves to dismiss Young's § 1983 claim against it on the ground, *inter alia*, that Young has failed to plausibly allege that any violation of his constitutional rights was pursuant to an official City policy or custom. Young responds that he

> has sufficiently shown municipal liability and deliberate indifference because the City of Irving's official policies, outlined in its Charter, act as the driving force behind permissive customs of fabricated warrant applications, probable cause affidavits, and blood extraction warrants within it's subordinate organizations—IPD/Internal Affairs. Plaintiff also states a trend of decreased police accountability for the last five years. Finally,

- 33 -

> Plaintiff sufficiently states that police officers who are managed/promoted/controlled by the city council are incentivized to fabricate sworn statements.

P. Resp. (ECF No. 46) at 5-6.

To the extent that Young contends that the city's "Charter" was the moving force behind the deprivation of his constitutional rights, Young has failed to plead with any specificity what provision of the City charter—a voluminous document that consists of 11 Articles with multiple subparts—caused the deprivation of his constitutional rights or how it did so.

To the extent that Young contends that the alleged constitutional deprivations in this case resulted from the "permissive customs of fabricated warrant applications, probable cause affidavits, and blood extraction warrants," Young has failed, other than in conclusory terms, to plead that there was in fact such a custom. "An official policy 'usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy."'" *Covington v. City of Madisonville*, 812 Fed. Appx. 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). A "pattern of conduct" is necessary when the municipal actors are not policymakers. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question." . . . A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated

instances.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (citations omitted). If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* at 850 (citation omitted).

Young has failed to plausibly plead a single other instance in which IPD officers submitted a fabricated warrant application, probable cause affidavit, or blood extraction warrant. In fact, the allegations in the amended complaint permit the court to draw the reasonable inference that the alleged "fabrication" that occurred in this case was an isolated occurrence, not a widespread custom.

Young does not point to any other policy or custom that he contends was the moving force behind the deprivation of his constitutional rights. Accordingly, the court holds that the City is entitled to dismissal of Young's § 1983 claim to the extent that it is based on an alleged custom or practice.

C

Young also appears to assert failure-to-train and failure-to-supervise theories of liability under § 1983. "[T]here are limited circumstances in which an allegation of a 'failure to train' [or failure to supervise] can be the basis for liability under § 1983." *City of Canton*, 489 U.S. at 387. To succeed on a failure-to-train or failure-to-supervise claim, a plaintiff must be able to show: (1) the training procedures or supervision of employees was

inadequate, (2) a causal link between such failure and the violation of plaintiff's constitutional rights, and (3) such failure amounts to deliberate indifference. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (brackets and citation omitted). Thus when a municipality's policymakers are on actual or constructive notice that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipality may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*

Regarding the alleged failure to train, Young alleges that "the C[i]ty of Irving failed to intervene, train, respond, & failed to manage its organizational policies, which caused Mr. Young constitutional deprivation." Am. Compl. at 49 (bold font, capitalization, and underlining omitted). This conclusory allegation, which does not identify any inadequate training procedures much less identify a causal link between such failure and the violation of Young's constitutional rights, is alone insufficient to plausibly plead a § 1983 claim based on a failure-to-train theory. This is because, as the court explained in *Young I*:

> Young does not allege any specific inadequacy in the training of IPD officers; he does not plausibly plead that a failure to train or supervise the IPD Officers was the moving force in causing his constitutional injury; and he does not allege, other than in conclusory terms, that any policymaker acted with deliberate indifference to the allegedly inadequate training or supervision of IPD officers.

*Young I*, 2024 WL 4193936, at *15.

- 36 -

Young has also failed to plausibly plead a § 1983 claim based on the City's alleged failure to supervise or manage its employees.  In support of his claim for "failure to intervene, supervise, manage, and deliberate indifference," Am. Compl. at 67 (bold font and capitalization omitted), Young alleges that the City "relied on false statements and material omissions in an affidavit, submitted to a magistrate for review of whether probable cause existed for a felony prosecution," *id.* ¶ 289; "failed to intervene when Mr. Young reported the incident through the formal complaints management process," *id.* ¶ 293; "promoted [Sgt.] Landry and kept him employed, even though he has a history of misconduct," *id.* ¶ 294; "intentionally and purposely established a form of government that gives it full power to justify their agents' misconduct," *id.* ¶ 295; and "was directly involved in the processing, executing, and management of the business functions that wrongfully prosecuted Mr. Young," *id.* ¶ 296.  He also makes the conclusory allegation that "the C[i]ty of Irving failed to intervene, train, respond, & failed to manage its organizational policies, which caused Mr. Young constitutional deprivation." Am. Compl. at 49 (bold font, capitalization, and underlining omitted).

To the extent that Young relies on the City's failure to intervene after he filed a formal complaint and its promotion of Sgt. Landry despite his "history of misconduct," Young has not plausibly pleaded a failure to manage or supervise that was a "moving force" behind his alleged constitutional deprivations.  This is because the conduct about which he complains occurred *after* the alleged constitutional deprivations and thus could not have caused them.

Young's remaining allegations, which are largely conclusory, simply do not plead any

failure to supervise or manage that resulted in the constitutional deprivations at issue in this case. Nor has Young plausibly alleged that the City's final policymaker—here the City Council, *see Young I*, 2024 WL 4193936, at *13 (citing *Pinedo v. City of Dallas, Texas*, 2015 WL 221085, at *5 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.))—acted with deliberate indifference.

Accordingly, the court grants the City's motion to dismiss Young's § 1983 claims to the extent they are based on an alleged failure to train, intervene, or supervise.

X

In sum, the court grants the Defendant Officers' motion to dismiss on qualified immunity grounds all of Young's claims against Sgt. Phillips, all of Young's claims against the City, and all of Young's claims against Sgt. Landry and Officer Hammett except for the claims set out in counts II and III. Because no claims remain against Sgt. Phillips or the City, the court today is entering a Rule 54(b) final judgment dismissing this lawsuit as to these defendants.

- 38 -

\*     \*     \*

Accordingly, for the reasons explained, the court grants the City's motion, grants in part and denies in part the Defendant Officers' motion, and dismisses Young's actions against the City and Sgt. Phillips with prejudice by Rule 54(b) final judgment filed today.

**SO ORDERED**.

March 21, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 39 -